FREDERICK BUSH v. PHILIP WADSWORTH AND THE IMPROVED
EAGLE PORTLAND CEMENT CO., AND FREDERICK BUSH
AND THOMAS PATTERSON v. SAME DEFENDANTS.

| 60 | 255 |
|----|-----|
| 60 | 344 |

*Subrogation* [1]—*Doctrine of examined and applied to facts found—Foreclosure suit—Prior mortgagees as party defendants—Effect of clause in decree fixing their rights.*

A corporation purchased two parcels of land for the purposes of its business, subject to a purchase price mortgage executed by its grantor on each, and afterwards mortgaged its plant, including said lands, to secure its bonds for the sum of $25,000. It was then indebted to the complainant (its president) and to various other parties, in about the sum of $21,000, and it was agreed that complainant, and other stockholders who were its indorsers, should take a certain amount of these bonds towards such indebtedness, or to indemnify them as such indorsers. The complainant was afterwards authorized by the directors of the corporation to run its business, the stockholders to share in the losses and profits, if any, and in the expenses, and did operate said business under such authority until the foreclosure of the $25,000 mortgage and the sale of the corporation plant there-

<hr/>

[1]NOTE.—A court of equity will not subrogate a volunteer to the rights of a mortgagee under a mortgage paid by him: *Smith v. Austin*, 9 Mich. 465.

An execution creditor, on payment of a chattel mortgage subject to which his levy is made, may demand an assignment of the mortgage: *Lucking v. Wesson*, 25 Mich. 443.

A mortgagee purchasing mortgaged premises on foreclosure at law subject to a note not then due, takes the premises charged with such unmatured debt, it being conclusively presumed that the land sold for that much less than it would otherwise have brought. In such a case the mortgagee cannot collect the note of the mortgagor by a suit at law, and if allowed to do so the mortgagor would be entitled to be subrogated to the rights of the mortgagee under his mortgage, in order to subject the land to the payment of such note: *Shermer v. Merrill*, 33 Mich. 284.

A mortgagee, on foreclosure in equity, may have the benefit in that suit of the obligation of a grantee of the mortgagor who has assumed and covenanted in his deed to pay the mortgage debt as a part of the purchase price of the mortgaged premises: *Hicks v. McGarry*, 38 Mich. 668, and cases cited in opinion. See, also, *Taylor v. Whitmore*, 35 Mich. 99; *Manwaring v. Powell*, 40 Id. 374; *Winans v. Wilkie*, 41 Id. 266; *Booth v. Conn. Mutual Life Ins. Co.*. 43 Id. 299; *Unger v. Smith*, 44 Id. 24; *Gage v. Jenkinson*, 58 Id. 172.

Where one of two partners pays a mortgage on the partnership property which it was the duty of his co-partner to discharge, on condition that it shall stand as security for such payment, an equity arises in his favor entitling him to indemnity through the mortgage: *Laylin v. Knox*, 41 Mich. 40.

under, during which time he paid certain installments of principal
and interest on the two mortgages first above mentioned, and claims
to have been thereby subrogated to the rights of the mortgagees, as
far as the sums paid are concerned.   The defendant corporation,
which acquired the property of the original corporation after said
foreclosure sale, admits such payments, but claims that they were
made by complainant as president of, and from funds belonging to,
the original corporation.

The decree in the foreclosure case charged the corporation plant
with the balance found due on the two prior mortgages, and with
the moneys paid thereon by complainant; and the defendant corpo-
ration acquired its title to said plant with full knowledge of this
decree, and by sale under it.

The complainant afterwards secured an assignment of the two
prior mortgages, and instituted suits to foreclose the same, in which
the defendant corporation appeared and answered, claiming the
benefit of a cross-bill, and averring that the amounts paid by com-
plainant were paid as agent and from the funds of the original cor-
poration, of the assets of which it was assignee; that complainant
had moneys in his hands belonging to the original corporation, which
it was his duty to apply on said mortgages, which as between him
and the defendant corporation were paid, and should be discharged;
that the bonds were issued to pay the debts of the original
corporation, and these mortgages, of which bonds complainants
received twenty-two, amounting to $11,000; for which he had never
accounted,—and prayed for such accounting, claiming a balance due

---

The holder of three mortgage notes indorsed by the mortgagor, fore-
closed on the first note, bidding in the land in her own name.   She
afterwards sued the mortgagor on the third note, which was not due at
time of foreclosure:

*Held*, that the case was ruled by that of *McCurdy v. Clark*, 27 Mich.
445, the indorser having a right, on payment of the note, to look to the
mortgage for indemnity: *Bridgman v. Johnson*, 44 Mich. 492.

A party who is compelled to pay a claim for the heirs of a deceased
person, who, on repaying it, will be entitled to indemnity from the estate,
will be subrogated to the latter's rights, and may file his claim directly
against the estate: *Campau v. Miller*, 46 Mich. 148.

As to the right of a booming company to be subrogated to the rights
of its superintendent in a contract made with the company, see *Richard-
son v. Welch*, 47 Mich. 309.

A person loaning money in good faith to an administrator for the
purpose of paying the debts of the estate, and receiving as security a
mortgage executed under color of authority from probate court, but held
invalid for reasons set forth in *Det. F. & M. Ins. Co. v. Aspinall*, 45 Mich.
332, will be subrogated to the rights of the holders of a mortgage on
lands belonging to the estate which was paid from said loan: *Det. F. & M.
Ins. Co. v. Aspinall*, 48 Mich. 238; and, see *Lockwood v. Bassett*, 49 Mich.
550, in support of principle last stated.

Where a bill of lading of goods was sent to a bank with a draft for
the amount due, payable on delivery, and the vendee obtained possession
to examine the property, but failed to pay the draft or return the prop-

from complainant. Complainant was not shown to have been obligated by his connection with the old corporation to pay these mortgages, and at time of receiving an assignment of same was its creditor, even if charged with the $11,000 of its bonds, which could not be sold in the market at fifty cents on the dollar, although he credited same to the original corporation in his expense account at their face value; yet it did not appear that it was not at all times his debtor, even on this statement of account.

Complainant finally sold the bonds at twenty-five cents on the dollar to a stockholder of the original corporation, who was also a member of the defendant corporation, which was admitted to be their par value at time of sale. The only testimony showing his agreement to take the bonds at their face value, was the fact of his so charging them in his account with the original corporation, and he denied any such agreement. The evidence disclosed that complainant had an equitable claim for a large amount against the original corporation, and it appeared that, instead of using its funds to make the payments on said mortgages, he made them with his own money, for want of such funds.

*Held,* upon the foregoing facts, that it was necessary for complainant to make the payments upon said mortgages, not only to save the property of the corporation, but to protect his own interest as a bondholder and stockholder; that, in effect, they were made out of his own moneys, and the fact that he charged such items against the corporation in hope that the business might pay enough to reimburse him, did not change his equities.

---

erty, and the bank paid the draft: *Held,* that replevin would lie in favor of the bank: *West. Mich. Sav. Bank of Bangor v. Howard,* 52 Mich. 423.

The assignee of a second mortgage may hold the assignment as security for the money paid to redeem from a prior mortgage: *Wendell v. Highstone,* 52 Mich. 553.

A guardian, on satisfying his ward's claim for money wrongfully invested in real estate, cannot be subrogated to the latter's equities and enforce the trust arising in favor of the ward, for his own benefit. Nor can his heirs, on satisfying such a claim against his estate: *Rowley v. Towsley,* 53 Mich. 329.

Persons equitably entitled to land on paying a mortgage taken in good faith by another, should be subrogated to the mortgagee's rights against the mortgagor: *Warner v. Hall,* 53 Mich. 372.

It is only to prevent fraud and subserve justice that equity engrafts the wholesome provisions of subrogation, or of equitable lien, upon a transaction; and it should never be done where it would work injustice: *Kelley v. Kelley,* 54 Mich. 47.

A creditor, having levied upon an undivided one-half interest in a field of wheat, declined to harvest the grain, and a mortgagee of the remaining interest cut and stacked it:

*Held,* that the creditor could not be subrogated to the rights of the mortgagee without paying or tendering the amount due on the mortgage, and also the expenses incurred in such partial foreclosure: *Shutes v. Woodard,* 57 Mich. 213; see, also, page 561; see, also, *Myres v. Yaple,* 60 Mich. 339.

*Held*, further, that as the defendant corporation became the owner of the corporation plant by a purchase under the decree made on foreclosure of the $25,000 mortgage, and a sale thereunder expressly subject to complainant's claim, it can urge no equitable defense against complainant's right to a decree for the amount of such payments against the mortgaged premises, save that they were made with the funds of the corporation, or that complainant was indebted to it, and therefore in duty bound to make such payments for the corporation; which defenses defendant's proofs fail to sustain.

Appeal from Kalamazoo.  (Mills, J.)  Argued January 15, 1886.  Decided April 8, 1886.

Complainants appeal.  Decrees reversed and new ones entered in accordance with the opinion and the prayers of the bills of complaint.  The facts are stated in the opinion and summarized in the head note.

*Dallas Boudeman*, for complainants:

Complainant Bush, by the payments made on the mortgages, being interested as a bondholder and stockholder of the corporation, was subrogated to the rights of the mortgagees to the amounts of such payments.  Jones on Mortgages, vol. 1, §§ 874–885.

The decree in the foreclosure case determined complainant's rights against the defendant corporation in this case, it being in the direct line of its title, and one of the instruments through which it claims the ownership of the property; hence, an estoppel by record arises against said defendant, which cannot be overcome by parol proof, or overcome or qualified by any claim that complainant should not have been made a party to that suit: he was so made, and, so far as the party purchasing is concerned, it is fully bound by the conditions and determinations in the decree through which it claims, whether regular or irregular.  Had the defendant acquired its title by a conveyance from a private party, "subject to a fixed sum to be paid to complainant, who should have a lien on the premises" conveyed for this amount, no one would deny that the grantee was bound by such provision.  But the defendant is no less bound by the decree referred to, the provisions of which are indeed stronger than the case supposed.

*George M. Buck*, for complainants:

Complainants are entitled to decrees for the several amounts due on the mortgages at the time of their assignment to them, respectively, there being no proof but that these sums were actually paid: *Wiswall v. Ayres*, 51 Mich. 324; and they are entitled to be subrogated to the place of the mortgagees as to the payments made prior to such assignments: Sheldon on Subrogation, p. 10; *McCormick v. Irwin*, 35 Penn. St. 111–117; *Heart v. Bryan*, 2 Dev. Eq. (N. C.) 147. Although the debt may be extinguished as between the debtor and creditor, it is kept alive as between the payor and the other parties, so far as may be necessary to preserve the securities: *Wall v. Mason*, 102 Mass. 316; and such payment will operate in the nature of an assignment, subrogating the payor to the creditor's place, as may best serve the purposes of justice and the just intent of the parties: *Robinson v. Leavitt*, 7 N. H. 99; *Starr v. Ellis*, 6 Johns. Ch. 395; *Cass v. Martin*, 6 N. H. 25; *Barker v. Parker*, 4 Pick. 505; *Russell v. Austin*, 1 Paige Ch. 192.

As a general rule, all persons having an interest in property subject to an incumbrance by which such interest may be prejudiced or lost, have a right to pay the debt or charge which creates it, and, if the debt be one for which the ultimate liability rests on another party, they will, upon such payment, be subrogated to the right of the creditor against said property: Sheldon on Subrogation, p. 13; *Powers v. Golden Lumber Co.*, 43 Mich. 468; *Bigelow v. Cassedy*, 26 N. J. Eq. 557; *Denman v. Nelson*, 31 N. J. Eq. 452; in re Coster, 2 Johns. Ch. 503; *Dings v. Parshall*, 7 Hun, 522; *Page v. Foster*, 7 N. H. 392; *Downer v. Fox*, 20 Vt. 388; *Young v. Williams*, 17 Conn. 393; Mosier's Appeal, 56 Penn. St. 76; *Darst v. Bates*, 95 Ill. 493; *White v. Hampton*, 13 Iowa, 259; *Carter v. Taylor*, 3 Head. (Tenn.) 30; *Staples v. Fox*, 45 Miss. 667; *Hines v. Potts*, 56 Miss. 346.

A lien creditor, on paying a prior lien, is subrogated by law to the rights of the prior creditor: *Silver Lake Bank v. North*, 4 Johns. Ch. 370; *Brown v. Simons*, 44 N. H. 475; *Armstrong v. McAlpin*, 18 Ohio St. 184; *Russell v. Howard*, 2 McLean, 489; and this is true whether he took a discharge or an assignment, or neither, of the mortgage paid: *Twombly v. Cassidy*, 82 N. Y. 155; *Manwaring v. Powell*, 40 Mich. 371; *Taylor v. Heggie*, 83 N. C. 244; *Towle v. Hoit*, 14 N. H. 61; *Muir v. Berkshire*, 52 Ind. 149.

The case at bar is a proper one for the application of the

principles hereinbefore stated, as will be seen by an examination of the facts disclosed by the testimony.

Complainant Bush was properly made a party defendant in the foreclosure suit, and the decree was appropriate and proper, and cannot be attacked in this collateral suit: Story's Eq. Pl. § 193; *Finley v. U. S. Bank*, 11 Wheat. 304; *Hagan v. Walker*, 14 How. 37; *Jerome v. McCarter*, 94 U. S. 734; *Haines v. Beach*, 3 Johns. Ch. 459; *Ensworth v. Lambert*, 4 Id. 604; *McGown v. Yerks*, 6 Id. 450; *Person v. Merrick*, 5 Wis. 231; *Raymond v. Holborn*, 23 Wis. 57.

*E. M. Irish*, for defendant corporation:

Complainants were not proper parties to the Otis foreclosure bill. Prior mortgagees are not proper parties to a suit for the foreclosure of a subsequent mortgage, and their claims cannot be so litigated: *Chamberlain v. Lyell*, 3 Mich. 448, and see language of court, pp. 459, 460; *Wurcherer v. Hewitt*, 10 Mich. 453; *Comstock v. Comstock*, 24 Mich. 39; *Summers v. Bromley*, 28 Mich. 128; *Bell v. Pate*, 47 Mich. 468; and the decree in that case is not conclusive as between the parties in this suit: *Nims v. Vaughn*, 40 Mich. 356.

As to when a judgment constitutes a bar to a subsequent action, see *Tucker v. Rohrback*, 13 Mich. 73. The clause in the Otis decree assuming to pass on prior mortgages, is surplusage: *Dickenson v. Hayes*, 31 Conn. 417, approved in *Jacobson v. Miller*, 41 Mich. 98; and the merits in relation thereto, or the complainant's claimed lien by subrogation, were not passed upon, and this alone is conclusive of the question of res adjudicata: *Baxter v. Aubrey*, 41 Mich. 14.

The payments made by Bush on the mortgages were voluntary, and cannot avail in this suit: *Smith v. Austin*, 9 Mich. 465. A party must succeed, if at all, on the case made by his bill: *Ford v. Loomis*, 33 Mich. 121–2; and the payment by Bush and Patterson, who were strangers to stock and bonds, and membership in the corporation, is a different case from the one set out in the bill, which claims a payment by Bush, individually, to protect his bonds, and claiming subrogation for that reason.

MORSE, J. These two cases were argued and submitted together, and involve nearly the same state of facts.

The first bill is filed to foreclose a mortgage executed by the defendant Wadsworth to one Hiram Lewis; and the

other to foreclose a mortgage given by Wadsworth to one Isaac Van Kersen.

In the summer of 1876, Wadsworth bought the land which is covered by these mortgages,—part of it of Lewis and a portion of Van Kersen. He executed purchase-price mortgages upon the two parcels,—one to Lewis upon the land bought of him, for $2,074, and one to Van Kersen upon the other piece, for $3,000.

He then sold both parcels to the Eagle Portland Cement Company, subject to these mortgages, the land becoming a part of the company's plant. This company was composed of the complainant, who resided in Kalamazoo, where the plant was located, and other parties, most of whom resided in Chicago, Illinois.

The corporation was organized and existed under the laws of the state of Illinois.

On the twenty-fifth day of January, 1878, this corporation, being indebted to various parties, elected the complainant its president, and voted to mortgage its plant in the sum of $25,000. It voted to issue, and did issue, bonds of $500 each for the above amount, and executed its mortgage upon its real estate and property to one George L. Otis, as trustee for the holders of said bonds, and to secure them ; the mortgage being in form an Illinois trust deed.

The corporation at this date was owing Bush & Patterson, the complainants in the second bill, who were copartners in business, the sum of $3,359.40 ; also some floating debts in Kalamazoo; about $12,000 in Chicago ; and the amount of these Lewis and Van Kersen mortgages, less payments of $690; and one year's interest upon the one to Lewis; and $1,000 and $300 interest upon the one to Van Kersen,— making in all a total indebtedness of about $21,000.

Some of the stockholders were indorsers upon the Chicago indebtedness, and it was agreed that Bush and the others should take a certain amount of these bonds towards the company's indebtedness to them, or to indemnify them for their liability as indorsers. The complainant Bush took $2,500 of the bonds, and some of the others also took some,

and paid the amount of the same on the Chicago indebtedness. The indebtedness at the latter place was nearly paid in this manner.

The business of the company not prospering as expected, it is claimed by the complainant Bush that by an agreement between himself and the other directors, and at their request, he was authorized to run the works, with the understanding that he should do the best he could with the business, and if any profit was made, divide the same among the stockholders, who were also to share in the expenses, and the losses, if any. This claim is supported by the proofs. Thereupon, commencing about February, 1878, the complainant Bush, or Bush & Patterson, it is immaterial which, carried on the business of the company until the foreclosure of the Otis trust deed and sale of the property thereunder as here-inafter stated.

The complainant Bush further claims that when the payments of installments of principal and interest, during this time, became due on these two mortgages, in order to protect the interests of the trustee, Otis, and himself as holder of a portion of these bonds, he was obliged to pay, and did pay, upon the Lewis mortgage the sum of $1,671.90, and upon the Van Kersen mortgage the sum of $1,200, whereby he became subrogated to all the rights of said mortgagees, as far as these amounts are concerned.

It is admitted that he paid these amounts, but not out of his own or Bush & Patterson's money, as he claims. The Improved Eagle Portland Cement Company, which defends, acquired the property subsequently, and asserts that these payments were made with moneys belonging to the Eagle Portland Cement Company, and were paid by Bush as the president of that corporation.

March 1, 1882, at a foreclosure sale of the premises under the Otis trust deed, the land covered by the Lewis and Van Kersen mortgages was bid in by one John M. Roundtree, who conveyed to the Improved Eagle Portland Cement Company, the corporation defendant in these suits. This defend-

ant also holds a deed from the old corporation, the Eagle Portland Cement Company.

In the Otis foreclosure proceedings, the old corporation, Jeremiah P. Woodbury, Allen Potter, and Frederick Bush were made defendants. Woodbury was made a party on the ground that he owned the Van Kersen mortgage, Potter because he was supposed to hold the Lewis mortgage, and Bush for the reason, as therein stated, that he claimed to have paid out moneys on these prior mortgages for and in behalf of the trustee, Otis. And the decree in that case expressly states and finds that the lands to be sold thereunder are subject to incumbrances which are prior to the trust deed, as follows: To said defendant Woodbury, as holder of Van Kersen mortgage, $1,451.36; to holder of Lewis mortgage, $873.12; and to Frederick Bush, for moneys advanced upon said prior mortgages, $3,621.90; in all, $5,946.38.

The defendant corporation acquired its title with full knowledge of this decree, and by sale under it.

January 10, 1883, the complainant Bush acquired, by a duly-executed assignment, the note and mortgage given by defendant Wadsworth to Lewis; and on the same day and year the Van Kersen note and mortgage were duly assigned to the complainants, Bush & Patterson. Bush & Patterson also transferred their interest in the Lewis mortgage to Bush.

The defendant corporation in its answers claims, as before stated, that the amounts paid by Bush, or Bush & Patterson, upon these mortgages, before assignment, were paid out of the moneys of the Eagle Portland Cement Company, and as the agent or agents of said company; that the defendant corporation is the assignee of all the property, assets, and choses in action of said Eagle Portland Cement Company, either legal or equitable; and that said complainant Bush had large sums of money in his hands belonging to said old corporation, and it was his duty to apply said funds in payment of these mortgages, and that he had no right to take assignments in his name, or in the name of Bush & Patterson; and that as between complainants and the corporation defendant, as assignee of the old corporation, the mortgages are in

fact fully paid and satisfied, and ought to be discharged; that said bonds, secured by the Otis trust deed, were issued to pay the indebtedness of the Eagle Portland Cement Company, including these mortgages; that Bush took and disposed of twenty-two of these bonds, amounting to $11,000, for which he never paid said company, nor accounted to it for the price of the same; nor has he ever accounted for them to the defendant corporation, its successor.

This defendant claims the benefit of a cross-bill by its answers, and prays for an accounting, claiming an indebtedness, over and above the mortgages, from Bush to the corporation.

The decrees below dismissed the bills of complainant without prejudice to the right of either or any of' the parties to file a bill for an accounting in relation to the matters involved. in said suit.

We are satisfied from the proofs that the complainants are entitled to a decree in each cause for the amount due on the note and mortgage in each case. There is no showing that the complainant Bush was ever obligated by his connection with the old corporation to pay these mortgages. Under all the evidence in the case, charging him with the twenty-two bonds at $11,000, the old corporation was still in his debt at the time he took the assignments of these mortgages. Most, if not all, of the stockholders of the present company were members of the old corporation, and have profited by the foreclosure of the Otis trust deed—at least in the amount of these two mortgages, if not more. The plant was sold expressly subject, by the decree under which the sale was made, to these mortgages, and also the amount that Bush had paid upon them before the decree was taken. It is natural to suppose that the bidder, Roundtree, who was in fact the agent of the new corporation, obtained the property at public sale with reference to these incumbrances, and at so much less a figure than he would had it been clear and unincumbered.

The evidence goes to show that the non-resident stockholders put the whole burden of this failing business upon

the shoulders of Bush; that some of them refused or neglect-ed to take the share of the bonds they agreed to when they were voted; that the bonds could not be sold in the market at fifty cents on the dollar; that Bush & Patterson made their own note for $5,000 to keep the concern in funds; that Bush was finally urged by the others to take the remaining bonds and do what he could with them; that he took them upon his own hands, and credited them to the company, in his expense account with it, at their face value; yet it does not appear that there was ever a time when the corporation was not indebted to him, or his firm, even charging him with the full par value of the bonds. He finally sold the bonds at twenty-five cents on the dollar, admitted to be their market value at the time of such sale, to one of the stockholders of the old corporation, who was also a member of the new corporation.

The complainant Bush insists that he never agreed to take these bonds at their face value; nor is there any testimony showing that he so agreed, save the fact of his charging them against himself in his debit and credit account against the old company.

It seems from the evidence before us that Bush has lost more in this transaction than the other stockholders, and has an equitable claim for a large amount against the old com-pany.

The testimony is very meager and uncertain as to the real state of the accounts between him and the Eagle Portland Cement Company; but from what does appear from Exhibit Q, introduced by the defendant, and the evidence of Bush, no one else seeming to know anything about it, it is appar-ent that Bush, instead of using the funds of the company to make the payments upon these mortgages, for which he claims the right of subrogation, was obliged to and did pay the same with his own money, or the money of Bush & Pat-terson, and for the want of any funds in his possession or within his reach belonging to said company.

If the stockholders of the corporation defendant, who were stockholders and directors of the old company, know any-thing about the affairs of such old company, or as to the state

of its accounts with the complainant, they have certainly failed by the record to acquaint us with their knowledge. The only intelligible testimony we have is that of the complainant and the Exhibit Q, which is a copy of complainant's account. His evidence is corroborated by what facts and circumstances appear outside of his own statements. He had the confidence of the Chicago directors, as they admit, and the burden of the whole business was put upon him, and the whole proofs show that he honestly and faithfully endeavored to fulfill the trust. He used his own credit to buoy up the business, and was a great loser thereby. He has the right to be compensated for the expenditures made to protect the company as well as himself. It was necessary that he should make the payments upon these mortgages, not only to save the property of the company, but his own interest as a bond-holder and stockholder. We are satisfied that, in effect, he made these payments out of his own moneys. The fact that he charged these items of payment against the company in hope that the business might pay enough to reimburse him, does not change his equities.

Although it is not here necessary to decide that the clause in the Otis decree recognizing the complainant's lien upon the mortgaged premises for these payments, is binding upon the defendant corporation as an adjudication of his claim to subrogation, yet, when this corporation became the owner of the property by a purchase under said decree, and by a sale of the premises expressly subject to this claim, it certainly can urge no equitable defense against his right to a decree for the amount of these payments against the premises, save that the payments were made with the funds of the company, or that Bush was indebted to the company, and therefore in duty bound to pay them for the company. And in these defenses it has signally failed in its proofs.

The decrees of the circuit court for the county of Kalamazoo, in chancery, are reversed, and new decrees will be entered here in each case, in accordance with this opinion and the prayers of the bills of complaint; the complainants to recover costs of both courts.

The other Justices concurred.