# INVESTORS' SYNDICATE v. LETTS et al.
## (BEYER, Intervener.)

(134 N. W. 317.)

**Assignment of mortgage — suit for rescission — judgment as res judicata.**

1. B., the intervener, assigned the mortgage involved in this suit to a corporation. Believing himself defrauded, he brought suit in the United States courts for a rescission, but was defeated. The corporation sold the mortgage to the plaintiff, who brought this suit in foreclosure. B. intervened, alleging the same fraud and rescission, and asks this court to declare him the owner of the mortgage. *Held*, that the decision of the United States court is *res judicata.*

**Intervention — by minority stockholder in action to foreclose mortgage — right to have corporation annulled.**

2. Even if the intervener might, as a minority stockholder in the corporation, defeat the transfer of the mortgage to the plaintiff, in a proper suit, and compel the return of the mortgage to the corporation, yet this will not support intervener's allegation that he, personally, owns the mortgage. This court cannot wind up the affairs of a foreign corporation, even when a party to the suit. In a foreclosure suit, an intervener must take the suit as he finds it, and cannot change to an action to annul a corporation. Plaintiff has proved his case, and is entitled to judgment.

Opinion filed December 9, 1911. On application for rehearing January 25, 1912.

Appeal from District Court, Stark county; *Winchester,* J.

Action by the Investors' Syndicate against J. S. Letts and others, in which J. F. Beyer intervenes. Judgment for defendants, and plaintiff brings error.

Reversed.

*Bangs, Hamilton, & Cooley,* and *Savage & Purdy,* for appellant.

*M. A. Hildreth,* for respondent.

BURKE, J. In the year A. D. 1888, the defendants Letts, being the owners of a quarter section of land in Stark county, North Dakota, gave thereon the $500 mortgage involved in this suit. The indebtedness matured five years later, but has never been paid. In the year 1895, some two years after the said mortgage had matured, one Williams, a pro-

moter, met the Lettses, and together they decided to organize a corporation to develop a lignite coal mine upon the land in question and adjoining lands. A charter was obtained, but such corporation never exercised its powers, principally because none of the incorporators had any actual money. Later in the year Williams decided to take in somebody with money, and Beyer, the intervener, was selected. A new corporation was organized, known as the "North America Coal & Mining Company." Its capital stock was $50,000. The Lettses were to contribute their equity in the quarter section already mentioned and another tract of land, and were to receive therefor $10,000 in stock of the new corporation. Beyer was to buy up the various mortgages against the land, pay the back taxes, etc., and turn them in, together with cash enough to make up the total sum of $3,440, and was to receive $10,000 in stock. Williams was to turn in a quarter section of land and his services as promoter for the remaining $30,000 stock. His share of the stock was taken in the name of himself, his wife, and his brother-in-law. Beyer thus came to buy up the $500 mortgage and assign it to the North America Coal & Mining Company. Said corporation, later on, assigned it to the plaintiff herein.

After the organization of the new corporation, Beyer acted as a director and as treasurer until 1898, when he resigned both offices. This corporation did nothing towards developing the mines, because it had no money. Beyer seemed to think Williams should develop the mines, and Williams insisted that such duty should be borne by the corporation, and tried to find some person who would loan money to it. Finally, about 1899, the plaintiff, as they claim, advanced some money to the corporation, and took over the $500 mortgage, as already mentioned. Needless to mention, this money was not used to develop the mines, but was used to pay Williams' back salary, whereupon Beyer became very wrathy, and began an action to rescind the entire transaction, alleging fraud, and asking that the assignment of the mortgage in question be set aside, as having been obtained from him by deceit. This action was brought, first, in the state and later in the United States courts. The Lettses joined with Beyer in bringing the suit, while Williams, his wife, brother-in-law, the two corporations organized by him, and the plaintiff herein were made defendants. After a trial upon the merits, a decision was rendered, dismissing plaintiff's bill upon the merits. The opinion of

the United States district judge is quoted below in part. This is very important, as the plaintiff contends that such decision is *res judicata* of the issue raised by the intervener herein. The United States court recites the above facts, and says: "As to Mr. Beyer's position in the matter, I am unable to find in any of the statements that were made any false or fraudulent representations. We will assume that Mr. Williams stated to him that there were veins of coal in that land. There is no evidence that there are not veins of coal in the land. There is no evidence that Williams stated to him that the mine had been opened and developed, so that the real character and quality and extent of those veins could be ascertained. . . . Mr. Beyer writes, before he ever had turned over any of these mortgages, that he had ascertained that the property was worth only $3,200. . . . I do not think there were any representations that would entitle Mr. Beyer to rescind his transactions. . . . I do not see how there is any course for me to adopt at this time, but to dismiss the bill upon the merits."

Had the decree closed here we think there would be no contention that it was not an adjudication of the issues involved in the case at bar. However, the said United States court continued its decree or opinion with what seems to us to be clear *dictum,* as follows: "As to the advancements of money by the Investors' Syndicate, there are some suspicious circumstances there. . . . I think the evidence would justify the belief that Tappen (secretary of plaintiff) and Williams had a full understanding in regard to it; . . . that the transaction that has been disclosed here was developed for the purpose of putting the Investors' Syndicate in a better position in respect to those loans by a mortgage on the property. I do not find it necessary, however, to pass a decree upon that subject." The court then goes on with some advice to the plaintiff, as follows: "What ought to be done would be to wind up this corporation. . . . This court has no authority to do it. . . . An application in Minnesota, if it has been made there, to wind up these corporations and impound their property for the benefit of those who actually contributed it, would, I suppose, meet with the approval of the courts of that state."

It seems very clear to us that the effect of the above decision is that, in the inception of the North America Coal & Mining Company, and in the assignment to it of the $500 mortgage, there was no fraud practised

upon Beyer that would entitle him to a rescission of the transactions; and the said court expressly declines to say whether there was fraud in the next transfer of the mortgage from the North America Coal & Mining Company to the Investors' Syndicate. It appears from the record that Beyer did actually bring a proceeding in the Minnesota courts, under a special statute of that state, asking that the North America Coal & Mining Company be dissolved and the assets distributed, but the Minnesota court dismissed such proceedings, because not brought in conformity with the statute (99 Minn. 475, 109 N. W. 1116).

After the two decisions above mentioned, the Investors' Syndicate read its title to the mortgage clear, and began the action at bar to foreclose it. Beyer intervened in the foreclosure action, alleging that the assignment of the mortgage was obtained from him by fraud, offering to return the $10,000 stock received by him, and asking as relief that he (Beyer) be declared to be the owner of the mortgage, and that the Investors' Syndicate have no title therein. To the allowance of this complaint in intervention, the Investors' Syndicate raises several objections. They insist that if it be considered an attempt to rescind, as is clearly indicated by the offer to return the stock, that the decree of the United States court is a bar; and that, if it be considered an attempt to have this court wind up the corporation and disburse its assets on account of the misconduct of Williams in conducting the affairs of the North America Coal & Mining Company, he is superseding the foreclosure action entirely, and substituting in its stead an action between the North America Coal & Mining Company (which is not even a party to this suit) and the Investors' Syndicate, upon the motion of Beyer, who is only a minority stockholder, and who has in his pleading repudiated such stock and tendered it back to the corporation. Many other strong objections are made to the right of the intervener to recover the title to the mortgage, but we think the above are sufficient.

(1) From the relief demanded in the intervener's complaint, it is clear that he treated the application as a rescission of his dealings with the North America Coal & Mining Company, and as such it is barred completely by the decree of the United States courts. Beyer has made one attempt to maintain just exactly the same claim he makes in this complaint, and he was then defeated. He cannot ask us to try that issue again. The United States court has decided that Beyer legally parted

with his title to this mortgage. He has not since regained such title. Therefore he must fail in this action.

(2) At the time of the oral argument in this court, Beyer, ignoring the fact that his complaint in intervention alleged a rescission of the contract, whereby he obtained the stock in the North America Coal & Mining Company, and his offer to return such stock to the company, said: "The proposition resolves itself into this: Can a minority stockholder defeat a party who is seeking to control or to get control of the assets of the corporation fraudulently?" We do not think the point material. Conceding that Beyer is a minority stockholder (notwithstanding his pleading that he is not), and further conceding that he might, in a proper action, defeat an effort of Williams and the plaintiff to rob the North America Coal & Mining Company of this mortgage, and further conceding that he might win in such a suit, yet the net effect of such a chain of suppositions would be to place the title to the mortgage in the North America Coal & Mining Company, where the United States court's decision will stop the chain of return towards Beyer. This state of affairs will not support the allegation in Beyer's complaint in intervention that he (Beyer) is the owner of the mortgage. He cannot ask us to wind up the affairs of the North America Coal & Mining Company, and upon impounding its assets give to him the mortgage, for two reasons at least: First, it is a Minnesota corporation, not under our jurisdiction, and not even a party to this suit; and, second, this is a foreclosure action, and intervener cannot change its nature to one to wind up the affairs of a corporation. Beyer must therefore fail in this action.

The plaintiff has proved each of the allegations of its complaint; the Lettses made no defense; Beyer made no defense for them. His claim was that he owned the mortgage, and that the mortgage should be foreclosed. Therefore it follows that the plaintiff is entitled to judgment of foreclosure as prayed for in its complaint. The trial court will so order.

### On Application for Rehearing.

After the statement of the case had been settled by the trial court, the respondent claimed that there had been omitted therefrom two exhibits offered by him at the time of the trial below. He moved this court

for a dismissal of the appeal, upon the grounds that the full record was not before this court. This court thereupon made an order that the record be returned to the lower court, to be there corrected and returned to us. Appellant, upon notice, obtained from the trial court an order correcting the statement, so as to include the two exhibits formerly omitted. When the case was reached for argument here, respondent objected to the jurisdiction of this court, upon the ground that the statement of case should have been resettled by giving the same notice provided in original settlements. This is wrong. The case was sent back by us for correction merely. The particulars were set forth in our order, and the trial court had nothing to do but to comply therewith. This was done and so certified. This court therefore has full jurisdiction of the case.

There is no merit in the other matters set forth in petition for rehearing, and such application is denied.