JOHN F. BEYER v. INVESTORS' SYNDICATE, North American Coal & Mining Company, and Producers & Consumers Co-operative Company.

(153 N. W. 476.)

This litigation is also the continuance of Investors' Syndicate v. Letts, 22 N. D. 452, and Investors' Syndicate v. North American Coal & Min. Co. post, 259. Action to establish a lien for taxes, mortgages, and other expenditures by plaintiff upon the land which constitutes the assets of the coal company. Trial de novo.

Lien for taxes — action to establish — title — asserting — United States district court — advance decision in.

1. Plaintiff cannot assert title to the premises in himself, the same issues having been determined against this contention in an action in the United States district court in the year 1909.

Subrogation—county—taxes—company—assets of.

2. Under the circumstances of this case, plaintiff will be subrogated to the interests of the county in the taxes which he paid to protect the assets of the coal company.

Stock in company — purchase of — action to rescind — evidence — bad faith — corporation — assets of.

3. Bringing an action to rescind his original purchase of stock in the coal company is not evidence of plaintiff's bad faith in the present action, nor of an attempt upon his part to wrongfully absorb the assets of the corporation.

---

Note.—The general rule was laid down in Title Guarantee & T. Co. v. Haven, 196 N. Y. 487, 25 L.R.A.(N.S.) 1308, 89 N. E. 1082, 1085, 17 Ann. Cas. 1131, that there is nothing in the nature of a lien for taxes or assessments, or in the fact that such lien exists in favor of a sovereign taxing power, to prevent the application of the equitable doctrine of subrogation, when justice demands it. This case, cited above in the opinion, is also found included in the discussion of authorities in note in L.R.A. 1915D, 697, on the right of one who voluntarily advances money to pay the taxes on the property of another to be subrogated to the rights of the public.

**Taxes—proof of payment—treasurer's receipt—burden of proof.**

4. The proof of payment of the taxes by production of the official receipt, signed by the treasurer, is sufficient to meet the burden of proof imposed upon plaintiff in this action.

**Taxes—payment—lien.**

5. The particular taxes for which plaintiff is entitled to a lien upon the premises are enumerated in the opinion.

Opinion filed June 4, 1915.   Rehearing denied July 2, 1915.

Appeal from the District Court of Stark County, *Crawford, J.* Judgment modified and affirmed.

*Bangs, Netcher & Hamilton* and *W. F. Mayer* for appellants. (*Charles E. Purdy* of counsel).

"The presumption of regularity of an official act does not extend to acts involving the forfeiture of an individual's rights, the depriving him of his property, or the placing of a charge or lien thereon." 16 Cyc. 1078, 1079; 37 Cyc. 976, 977.

The proper and legal assessment is an indispensable prerequisite to the validity of the tax to follow. Without a valid assessment there can be no lawful attempt to collect the tax, or enforce it against any specific property. 37 Cyc. 987, c. 1139, 2, 1251, 1252, 1516; 2 Cooley, Taxn. 3d ed. 1004.

The treasurer's receipt for taxes paid is no evidence of a levy or assessment. Swenson v. Greenland, 4 N. D. 534, 62 N. W. 603; Brown v. Corbin, 40 Minn. 510, 42 N. W. 481; Howes v. Gillett, 23 Minn. 232; Fleckten v. Spicer, 63 Minn. 458, 65 N. W. 926; Weimer v. Porter, 42 Mich. 569, 4 N. W. 306; Hanna v. Fisher, 95 Ind. 384; Merrill v. Wright, 41 Neb. 355, 59 N. W. 787; Adams v. Osgood, 55 Neb. 768, 76 N. W. 446; Clark v. Blair, 4 McCrary, 311, 14 Fed. 812; People ex rel. Seale v. Doane, 17 Cal. 486; Allen v. McKay, 139 Cal. 100, 72 Pac. 713; Hopper v. Malleson, 16 N. J. Eq. 384.

All the essential steps leading up to a valid tax must be alleged and proved, in cases of this character. United States v. Ross, 92 U. S. 281, 23 L. ed. 707; O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434; 25 Am. & Eng. Enc. Law, 320, 321, and notes 1 and 2.

It is not necessary to pay taxes before they are delinquent, in order

to be protected. One having a lien on land has the right to suppose that the title holder will pay the taxes, and he has no right to intervene and pay the taxes himself, until it is manifest that the owner will not do so. Jaggard, Taxn. p. 633; 37 Cyc. 1154, note 5; 1182, 1183, note 74; Pond v. Drake, 50 Mich. 302, 15 N. W. 466; Young v. Omohundro, 69 Md. 429, 6 Atl. 120; Loughridge v. Northwestern Mut. L. Ins. Co. 180 Ill. 267, 54 N. E. 153; Iowa R. Land Co. v. Davis, 102 Iowa, 138, 71 N. W. 229.

The personality of the corporation is wholly distinct from that of a share holder, and the latter has no title to, or direct interest in, the corporate property, nor any authority to act for the company; nor is he liable for its taxes. 10 Cyc. 373, et seq. 649, A; 26 Am. & Eng. Enc. Law, 899–901, 945, 947; 1 Cook, Corp. 5th ed. chap. 1, § 11, pp. 35–42; Smith v. Hurd, 12 Met. 384, 46 Am. Dec. 690; Humphreys v. McKissock, 140 U. S. 304, 312, 35 L. ed. 473, 475, 11 Sup. Ct. Rep. 779.

The ownership of property is in the corporation, and not in the holders of its stock. Gibbons v. Mahon, 136 U. S. 549, 557, 34 L. ed. 525, 526; Hyatt v. Allen, 56 N. Y. 557, 15 Am. Rep. 449; Jenks v. Brewster, 96 Fed. 629; Lee v. Sturges, 46 Ohio St. 161, 2 L.R.A. 556, 19 N. E. 560.

There is no privity of contract between a stockholder as such and his corporation, in regard to the payment of taxes. Gorder v. Conner, 56 Neb. 783, 77 N. W. 383; Western Dist. Warehouse Co. v. Hayes, 97 Ky. 18, 29 S. W. 738; Sargent v. Webster, 13 Met. 505, 46 Am. Dec. 743; Central R. & Bkg. Co. v. Claghorn, Speers, Eq. 562; Sanborn v. Lefferts, 58 N. Y. 184; Wausau Boom Co. v. Plumer, 35 Wis. 281; Barnsted v. Empire Min. Co. 5 Cal. 299; Reichwald v. Commercial Hotel Co. 106 Ill. 439; Gordon v. Preston, 1 Watts, 388, 26 Am. Dec. 75; 37 Cyc. 1182, note 74.

There was no contractual relation between the parties. 37 Cyc. 1152–1154; 27 Am. & Eng. Enc. Law, 749, 750; Bryant v. Nelson-Frey Co. 94 Minn. 307, 102 N. W. 859; Scharffbillig v. Scharffbillig, 51 Minn. 349, 53 N. W. 713; Janeway v. Burn, 91 App. Div. 171, affirmed in 180 N. Y. 560, 73 N. E. 1125.

There must be privity of contract or compulsion, before any right to a lien can be recognized. William Ede Co. v. Heywood, 153 Cal.

617, 22 L.R.A.(N.S.) 562, 96 Pac. 81; Doughty v. Miller, 50 N. J. Eq. 536, 25 Atl. 153; Exall v. Partridge, 8 T. R. 308, 3 Esp. 8, 4 Revised Rep. 656; Ætna L. Ins. Co. v. Middleport, 124 U. S. 534, 547–551, 31 L. ed. 537, 541–543, 8 Sup. Ct. Rep. 625; Suddath v. Gallagher, 126 Mo. 403, 28 S. W. 880; Mercantile Trust Co. v. Hart, 35 L.R.A. 352, 22 C. C. A. 473, 40 U. S. App. 559, 76 Fed. 676; Montgomery v. Charleston, 48 L.R.A. 503, 40 C. C. A. 108, 99 Fed. 825.

When a sale has been made the tax has been paid, and no tax remains. The statute relates to payment of taxes. A party paying taxes may be subrogated to the lien of the state. Rev. Codes 1905, § 1595, Comp. Laws 1913, § 2210; 2 Cooley, Taxn. 3d ed. 1043, 1048; 37 Cyc. 1383, 1388; 27 Am. & Eng. Enc. Law, 851, 852; Pond v. Drake, 50 Mich. 304, 15 N. W. 466.

Where a mortgagor redeems from a tax sale, the mortgagee cannot be compelled to reimburse therefor. 27 Cyc. 1254, note 14, 1255–1258.

*M. A. Hildreth,* for respondent.

The taxes assessed and paid were liens upon the lands, superior to the rights of all other parties concerned. Jacobs v. Union Trust Co. 155 Mich. 233, 118 N. W. 921.

An interested party, such as the plaintiff here, has the right to pay taxes on the property in which he is interested, and to protect and conserve the same, and to be subrogated to the rights of the state, after such property has been sold for taxes, and payment thereof has been made by him. Title Guarantee & T. Co. v. Haven, 196 N. Y. 487, 25 L.R.A.(N.S.) 1308, 89 N. E. 1082, 1085, 17 Ann. Cas. 1131; McNish v. Perrine, 14 Neb. 582, 16 N. W. 837; John v. Connell, 61 Neb. 267, 85 N. W. 82.

Courts will protect persons in the payment of taxes, in instances like the one before us. Farmers' Loan & T. Co. v. Stuttgart & A. River R. Co. 92 Fed. 246.

The doctrine is applied that, in the sale of property under foreclosure, the court will see to it that taxes, which are a paramount lien to all others, are satisfied out of the property, and that those paying the same should be protected. Goodnow v. Litchfield, 63 Iowa, 275, 19 N. W. 226, 59 Iowa, 226, 9 N. W. 107, 13 N. W. 86; Goodnow

v. Stryker, 61 Iowa, 261, 16 N. W. 486, 62 Iowa, 221, 14 N. W. 345, 17 N. W. 506; Goodnow v. Wells, 54 Iowa, 326, 6 N. W. 527.

The court made these taxes a lien on the property. If any person in good faith, because of a statutory obligation resting upon him, or because public policy so requires, pays money another is under obligation to pay, assent of such other is presumed, and the person so paying will be protected. Goodnow v. Moulton, 51 Iowa, 555, 2 N. W. 395.

Such a person, or Mr. Beyer in this case, was not a mere volunteer or intermeddler in the payment of the taxes. Redington v. Cornwell, 90 Cal. 49, 27 Pac. 40.

A stockholder in a corporation, in paying taxes of the corporation, is not a volunteer. Harrison, Law of Subrogation, 322, 323; 3 Cook, Corp. 6th ed. § 850, pp. 2996, 2997; Cooley, Taxn. 2d ed. 466; Rice v. Jerome, 38 C. C. A. 388, 97 Fed. 721; Re Bruce, 158 Fed. 123; 23 Am. & Eng. Enc. Law, 776; Pease v. Egan, 131 N. Y. 262; Wright v. Oroville Gold, S. & C. Min. Co. 40 Cal. 20, 3 Mor. Min. Rep. 558; Bush v. Wadsworth, 60 Mich. 255, 27 N. W. 532, 27 N. W. 532.

The payments made by plaintiff were for the benefit of the corporation, and he stood in the place of the corporation. Jacobs v. Union Trust Co. 155 Mich. 233, 118 N. W. 921; Home Invest. Co. v. Clarson, 15 S. D. 513, 90 N. W. 153; Farmers' Loan & T. Co. v. Stuttgart & A. River R. Co. 92 Fed. 246; Dalgardno v. Trumbull, 61 Wash. 659, 112 Pac. 928; Foley v. Oberlin Congregational Church, 67 Wash. 280, 121 Pac. 65.

Plaintiff's right to have the taxes paid back to him rests upon principles of equity and conscience. 3 Cook, Corp. p. 800; First Nat. Bank v. Ewing, 43 C. C. A. 150, 103 Fed. 168; Appleton Waterworks Co. v. Central Trust Co. 35 C. C. A. 302, 93 Fed. 286; Rice v. Jerome, 38 C. C. A. 388, 97 Fed. 719; Farmers' Loan & T. Co. v. Stuttgart & A. River R. Co. 92 Fed. 246; Georgia v. Atlantic & G. R. Co. 3 Woods, 434, Fed. Cas. No. 5,351; McLellan v. Detroit File Works, 56 Mich. 579, 23 N. W. 321; West St. Louis Sav. Bank v. Shawnee County Bank, 95 U. S. 557, 24 L. ed. 490.

The giving of a corporate note for an individual obligation is presumably *ultra vires*. The property of a corporation is a trust fund

for the payment of its debts, and no matter into whose hands it goes, it remains charged with such trust, which a court of equity will enforce. Domestic Teleg. & Teleph. Co. v. Metropolitan Teleph. & Teleg. Co. 39 N. J. Eq. 163; Bartlett v. Drew, 57 N. Y. 587; Lawrence v. Nelson, 21 N. Y. 158; Sawyer v. Hoag, 17 Wall. 610, 21 L. ed. 731; Ft. Worth City Co. v. Smith Bridge Co. 151 U. S. 301, 38 L. ed. 169, 14 Sup. Ct. Rep. 339; Nathan v. Whitlock, 9 Paige, 152, 3 Edw. Ch. 215.

Plaintiff, having advanced the payment of the taxes in good faith and to preserve the corporate property, is entitled to be reimbursed from the proceeds of the property, or to have a lien declared on the property. Sant v. Perronville Shingle Co. 179 Mich. 42, 146 N. W. 212; Central R. Bkg. Co. v. Pettus, 113 U. S. 116, 28 L. ed. 915, 5 Sup. Ct. Rep. 387; Miner v. Belle Isle Ice Co. 93 Mich. 97, 17 L.R.A. 413, 53 N. W. 218; Internal Improv. Fund v. Greenough, 105 U. S. 527, 26 L. ed. 1157; Atty. Gen. ex rel. Islington v. Brewers' Co. 1 P. Wms. 376.

In actions to determine adverse claims, the court will decree the payment of taxes. Fenton v. Minnesota Title Ins. & Trust Co. 15 N. D. 373, 125 Am. St. Rep. 599, 109 N. W. 363; State Finance Co. v. Beck, 15 N. D. 375, 109 N. W. 357; Powers v. First Nat. Bank, 15 N. D. 466, 109 N. W. 361.

Defendants claim that they are the owners in fee of the land in question. This, if true, does not deprive the court of the power to require them to repay these taxes, as a condition to the granting of any relief. Powers v. First Nat. Bank, 15 N. D. 466, 109 N. W. 361; Blessett v. Turcotte, 20 N. D. 151, 127 N. W. 505.

BURKE, J. This is a trial *de novo*. The litigation is a continuation of the controversy reported in Investors' Syndicate v. Letts, 22 N. D. 452, 134 N. W. 317, and closely allied to Investors' Syndicate v. North American Coal & Min. Co. post, 259, 153 N. W. 472, just decided by this court. The case at bar arises upon a complaint to determine adverse claims filed by Beyer against the North American Coal & Mining Company, Producers' & Consumers' Co-operative Company, Williams, his wife, Tappen, the administrator of the estate of the deceased Letts, and all persons unknown and their unknown heirs,

claiming any estate, or interest, or lien, or encumbrance upon the property described in the complaint, being the north half of twenty-one, 139–94, and the southeast one-quarter and northwest one-quarter of sixteen, 139–94, the lands upon which the coal mine is situated. In ¶ 3 of his complaint, plaintiff says: "The defendants above named claim certain estate or interest in, or lien or encumbrance upon, the same, adverse to the plaintiff herein, who is the owner in fee of the above described premises as aforesaid, and claim and allege title and interest in the same and whole thereof." In ¶ 4: "And plaintiff further alleges and charges the facts to be, that he has paid on the account of the said land and premises above described, the following amount of taxes, to wit: . . . And plaintiff has paid, or caused to be paid, on said premises, large sums of money in the way of redemption of mortgages, liens, and encumbrances upon the lands and premises, amounting to the sum of $3,500." ¶ 5: "And plaintiff further alleges and charges the facts to be, that he holds an assigned judgment amounting to $320, with interest thereon from March 13, 1906, which judgment was assigned by the Investors' Syndicate and defendant above to plaintiff on the aforesaid date." As relief, he asks that the defendants be required to set forth their adverse claims; that the same be adjudged null and void and that the several defendants be decreed to have no estate, or interest in, or lien or encumbrance upon, said property; that the title be quieted as to said claim, and that the defendants above named be forever debarred and enjoined from asserting title to said lands; that the plaintiff recover possession of the premises above described, and that he recover the full amount of his claims, with interest thereon, and that he recover in the sum of $500 yearly for the use and occupation of said land; and that he have such further relief as may be just and equitable, together with costs and disbursements. After the case was fully tried, plaintiff served an amended complaint, which is voluminous, and largely a recital of plaintiff's evidence adduced at the trial. In this amended complaint, plaintiff alleges that on the 15th of February, 1912, Arthur B. Robinson, as administrator of the estates of Elizabeth W. and Jeremiah S. Letts, deceased, for a valuable consideration, executed and delivered to the plaintiff certain deeds to the 4 quarters of land, which deeds are set forth in full in the complaint. The prayer for relief is prac-

tically the same as in the original complaint. As throwing light upon the intention of the plaintiff, we quote from his brief, wherein he says: "The cause of action on the part of the plaintiff is predicated upon his right and interest in and to the lands and premises that form the assets of the North American Coal & Mining Company. The plaintiff claims to have paid for many years the taxes assessed against these lands, in good faith, to protect the assets of the company. The evidence discloses the fact that the North American Coal & Mining Company have done nothing, except to answer in this case by the same attorneys who failed to answer for them in other cases." The only defendants to answer are the Investors' Syndicate, North American Coal & Mining Company, Producers' & Consumers' Co-operative Company. By reference to the case reported in 22 N. D. 452, 134 N. W. 317, it will be noted that, prior to the taking of Beyer into the corporations, an old corporation had been organized, which, however, had never exercised any of its powers. The reference was to the Producers' & Consumers' Co-operative Company, one of the answering defendants herein. They allege that they are the owners of one of the quarter sections of land; the North American Coal & Mining Company alleges that it is the owner of the remaining three quarters, while the Investors' Syndicate sets up the mortgage given by the Letts upon one quarter and the mortgage given by the Coal Company upon the three remaining quarters. They all plead the judgments in the prior suits as *res judicata.* The three corporations answer by the same attorneys, ask that the plaintiff's action be dismissed, that he recover nothing herein, and that he be restrained from further asserting any interest in or title to the premises adverse to the defendants. Plaintiff recovered judgment in the court below, and the three above mentioned defendants appeal, demanding a trial *de novo.*

As will be gathered from the foregoing statement of the case, it is difficult to locate plaintiff's theory of the case; and we are forced, in the interest of justice, and to end, if possible, this protracted litigation, to cover all possible theories of the complaint.

(1) If it is the intention of plaintiff to assert title to the premises in himself, as is evidenced by his plea of ownership and demand for relief, as well as his introduction in evidence of the deeds from the administrator of the Letts' estates, such claim has been successfully

met by the plea of *res judicata.* The decree entered by the United States district court in the year 1909, wherein Beyer and the Letts were joint plaintiffs in the action to rescind the contract whereby the coal companies were formed, and recover the lands, being decided adverse to them, prevents the assertion now by Beyer either of title in his own name directly, or through the Letts.

(2) If the complaint be treated as an effort by Beyer to subrogate himself to the interests of the county, as seems to have been adopted by the trial court, we have other and more important matters to consider. We are cited to the case of Title Guarantee & T. Co. v. Haven, 196 N. Y. 487, 25 L.R.A.(N.S.) 1308, 89 N. E. 1082, 1085, 17 Ann. Cas. 1131, wherein the trust company honored a forged check, and with the proceeds paid the taxes upon a piece of land. In allowing the trust company to be subrogated to the interests of the county, the court says: "There is nothing in the nature of a lien for taxes or assessments . . . to prevent the application of the equitable doctrine of subrogation when justice demands it. We think that justice demands its application here. Subrogation is not permitted (1) where the party seeking it has intermeddled with the affairs of the defendant; or (2) where it would prejudice the rights of innocent third parties." The next case cited by respondent is Farmers' Loan & T. Co. v. Stuttgart & A. River R. Co. 92 Fed. 246, wherein the court, after announcing the law about as given in the New York case, says: "I think there is sufficient evidence in the record to show that the company made Barstow its agent for the payment of these taxes, and that he paid them, and thus preserved the interest of the bondholders." Barstow was given judgment for the amount paid, with 6 per cent interest, and was given a lien superior and paramount to other encumbrances upon the railway. See also Goodnow v. Stryker, 61 Iowa, 261, 16 N. W. 486, where it is held that, where a person has paid taxes on land under the impression that he is legal owner thereof, and the true owner adopts such payments and claims the benefit thereof, the party making such payments is entitled to be reimbursed therefor by the owner, and a lien therefor upon the land. See also: Goodnow v. Wells, 54 Iowa, 326, 6 N. W. 527; Redington v. Cornwell, 90 Cal. 49, 27 Pac. 40, wherein it is said: "It is true that the doctrine of subrogation 'is not to be applied in favor of one who has officiously,

and as a mere volunteer, paid the debt of another, for which neither he nor his property was answerable, and which he was under no obligation to pay,'·nor where 'it would work injustice to the rights of ·others'. . . . It is also true that the plaintiff was not directly liable to pay defendant's proportion of the debts of the corporation; but as a stockholder he had a common, well-defined, beneficial interest, with all other stockholders, in the fund . . . from which defendant's proportion of the debts must have been paid, if not paid by defendant. . . . There can be no doubt that the plaintiff was entitled to contribution from the defendant, to the extent of defendant's proportion of the debt paid. . . . It follows that the payment was not voluntary, since contribution no more than subrogation is allowed in favor of a mere volunteer. But in this case the plaintiff, in addition to contribution, asks to be subrogated to the rights and remedies of Redington & Co. against the defendant, 'for the purpose of compelling contribution.' " The court then goes on to hold subrogation proper. See: 3 Cook, Corp. 6th ed. § 850; Cooley, Taxn. 2d ed. 466; Pease v. Egan, 131 N. Y. 262, 30 N. E. 102; Wright v. Oroville Gold, S. & C. Min. Co. 40 Cal. 20, 3 Mor. Min. Rep. 558; Bush v. Wadsworth, 60 Mich. 255, 27 N. W. 532, wherein the president, to preserve the property, paid interest notes due upon a mortgage, for which he was allowed to be subrogated to the rights of the mortgagee; Jacobs v. Union Trust Co. 155 Mich. 233, 118 N. W. 921; Home Invest. Co. v. Clarson, 15 S. D. 513, 90 N. W. 153. From the authorities above mentioned, it is apparent that, if Beyer in good faith paid the taxes upon the lands of the coal companies to preserve their property, he would undoubtedly be entitled to recover the sum so paid, with interest, and equity might subrogate him to the interests of the county. Appellant does not strenuously oppose this doctrine, but does insist that the payments made by Beyer were not in good faith. That they were made rather in an effort to himself absorb the assets of the corporations.

(3) Upon this phase of the question, we have to refer again to the history of the case. In 1902, Beyer brought his action to rescind his transaction with the coal company and to recover the land upon which the mine is situated. A few months thereafter he dismissed this action, and began another for the same purpose. This case was

decided by the United States District Court for North Dakota in 1909. Before the decision in the United States court aforesaid, foreclosure proceedings had been begun upon the Dana mortgage. Beyer, intervening therein, positively denied that he was a stockholder in either of the coal companies, claiming that he had rescinded his transaction by which he had obtained his stock, and claimed to be the owner of the mortgage. That litigation was finally decided in 1912. Eighteen days after the final disposition of the said case the present action was begun, based, in part at least, upon quitclaim deeds given by the administrator of the Letts estate to Beyer, which deeds are dated March 23, 1911, and February 15, 1912. Appellant further points out that all of the payments made for taxes were made pending litigation wherein Beyer was attempting to take away from the coal company the lands in question; and they insist that this fact is inconsistent with his present contention, that the payments were made in good faith, to preserve the assets of the company. This is a matter calling for the exercise of the broadest equitable principles. So far as the Investors' Syndicate is concerned, we have, in the foreclosure case just decided by this court, held them a party to an attempt to loot the coal company of its assets. Beyer, while speculating in his original investment, has, nevertheless, been free from any fraud in his transactions. Admitting all that appellants say about him, he is honesty personified, in comparison with Williams and his associates. Considering his provocation, we do not consider the actions to rescind evidence of bad faith upon his part; and we therefore conclude, that equity and good conscience require that the coal companies pay to him the taxes paid by him upon the property at a time when he believed himself to be the owner thereof. All such sums, with interest at the rate of 7 per cent from the date of payments, are hereby declared to be a lien upon the premises, to be enforced according to law by execution sale, if necessary.

(4) Appellants, in anticipation of this situation, claim that the proof is insufficient to show that Beyer paid such taxes. They concede that he has receipts signed by the treasurer of the county for such sums; but claim that the treasurer's receipt is not sufficient, but, in addition, there should have been proof of assessment and levy of the taxes themselves; and we are cited to Swenson v. Greenland, 4 N. D.

31 N. D.—17.

532, 62 N. W. 603. However, in the case of Blakemore v. Roberts, 12 N. D. 394, 96 N. W. 1029, this court held that, in actions to quiet title to land, the form of a complaint is authorized and prescribed by statute, and the rule announced in Swenson v. Greenland, supra, did not apply to such cases. We do not think any of the corporations named are in a position at this time to make an attack upon the validity of those taxes. Under the circumstances, therefore, the proof of payment is sufficient.

(5) It only remains to state that the taxes paid by Beyer, at the time he received his stock and deeded the land to the coal company, being up to and including the year 1894, cannot be allowed to him in this action. No taxes paid upon the northwest one quarter of sixteen, covered by the Dana mortgage, can be recovered, because Beyer's interest in this land has been adjudicated in the case of Investors' Syndicate v. Letts, 22 N. D. 452, 134 N. W. 317. The southeast one quarter of sixteen was never formally transferred to the North American Coal & Mining Company, of which Beyer was a stockholder, but the title remained in the Producers' & Consumers' Co-operative Company; but, as those companies are identical, our conclusion is, therefore, that Beyer should recover the amounts paid for taxes upon the southeast one quarter of sixteen and the north half of twenty-one, for the years 1895 and subsequent, and interest thereon at the rate of 7 per cent after each payment, and that he have a lien upon those three quarter sections for the same; and the trial court will enter judgment, authorizing execution sale of said premises to pay said sums according to law. This necessitates a slight modification of the judgment of the trial court, and, as so modified, said judgment is affirmed.