INVESTORS' SYNDICATE, a Corporation, v. THOMAS H. PUGH, as Administrator of the Estate of Jeremiah S. Letts, Deceased, and Arthur B. Robinson, as Administrator of the Estate of Elizabeth W. Letts, Deceased, and John W. Beyer, as Intervener.

(142 N. W. 919.)

**Disbursements — transcript on appeal — statutory costs.**

1. An allowance for disbursements in making a transcript on an appeal to the supreme court is allowed under § 7177, Rev. Codes 1905, as taxable disbursements, and is held not to be covered by § 7174, Rev. Codes 1905, which relates to statutory costs, and not to disbursements.

**Suit — equity — stenographer — testimony — costs.**

2. Where a trial judge in a suit in equity appoints a stenographer to take and report testimony, it is proper to allow to such person the fees allowed by § 2608, Rev. Codes 1905, and to tax the same as costs and disbursements in the proceeding.

**Surety company bonds — appeal — taxable costs — amount.**

3. Although the giving of surety company bonds upon appeal is authorized by §§ 4456 and 4457, Rev. Codes 1905, and the cost thereof may, under such statutes, be included in the taxable costs and disbursements in the proceeding, the amount taxed cannot exceed 1 per cent of the penalty or liability, no matter how much actually was paid or was necessary to be paid for such bonds.

**Statutes — bonds on appeal — constitutionality.**

4. Sections 4456 and 4457, Rev. Codes 1905, which authorize the giving of such bonds and the taxing of the cost thereof, are not unconstitutional as being class legislation.

**Printing — brief and abstract — appeal — costs.**

5. A claim for printing briefs and abstract held to be reasonable under the circumstances, and allowed.

**Foreclosure — attorneys' fee — statutory costs — mortgagor — mortgagee — intervener.**

6. Although in a foreclosure proceeding the foreclosure attorneys' fees provided by § 7176, Rev. Codes, exclude the taxable statutory costs provided for in § 7174, Rev. Codes 1905, as between the mortgagee and the mortgagor, yet such costs can properly be recovered against, and are the only attorneys' fees recover-

able against, an intervener who does not defend against the foreclosure, but claims title to the mortgage and seeks to have the same assigned and set over to him.

Opinion filed June 6, 1913.

Appeal from the District Court for Stark County; *Crawford, J.*

Motion to review retaxation of costs. Defendant and intervener appeal.

Modified.

Statement by BRUCE, J.

This is an appeal from an order of the district court of the tenth judicial district, sustaining a retaxation of costs by the clerk of that court under § 7186, Rev. Codes 1905. The bill of costs, as retaxed, was:

### Costs in District Court.

| | |
|---|---|
| Sheriff's fees | |
| Clerk's fees | $7.00 |
| Making transcript (including exhibits and binding) | 125.50 |
| Stenographer's fees, taking testimony | 55.30 |
| Bonds on appeal | 40.00 |
| Clerk's fees, certifying record on appeal | 5.00 |
| Statutory— | |
| Before notice of trial | 10.00 |
| After notice of trial | 3.00 |
| Additional defendants—(4) | 4.00 |
| Attorney fees on foreclosure | 50.00 |
| Remittitur | 2.00 |

### Costs in Supreme Court.

| | |
|---|---|
| Making and serving statement of case, etc. | 7.00 |
| Before argument | 5.00 |
| Argument | 15.00 |
| Clerk's fees | 15.65 |
| Printing abstract and briefs | 534.54 |
| | $878.99 |

The appellant objects to the allowance of the following items:

(a) Making transcript, including exhibits and bind-
     ing .................................$125.50
(b) Stenographer's fee, taking testimony .........  55.30
(c) Bonds on appeal .........................  40.00
(d) Items of statutory costs, to wit, $10, $3, $4 ...  17.00
(e) Items of printing appeal ..................  534.50

                                         $772.30

The merits of the controversy were passed upon by this court in the case of Investors' Syndicate v. Letts, 22 N. D. 452, 134 N. W. 317. The action was one to foreclose a mortgage, to which a defense was interposed of the statute of limitations and of a general want of equity. A petition in intervention was also filed, which alleged that the mortgage had been obtained by the plaintiff by fraud, and that the plaintiff had no right thereto or to foreclose the same, and which prayed that the said mortgage be decreed to belong to the intervener. To this petition an answer was filed, which denied its allegations generally, and also contained a plea of *res judicata*. In the district court the issues were decided in favor of the intervener, but an appeal being taken to this court and upon a trial *de novo* had under the provisions of § 7229, Rev. Codes 1905, the judgment of the district court was reversed and a judgment ordered in favor of the plaintiff and against the defendants and intervener for a foreclosure of the mortgage. The opinion of the supreme court was largely based upon a determination in favor of plaintiff's plea of *res judicata,* which it had interposed to the complaint in intervention, and which the lower court had decided adversely to it.

*M. A. Hildreth,* for appellants.

The law does not allow the expense of *making a transcript,* as either costs or disbursements. Rev. Codes 1905, §§ 7173, 7174; Elfring v. New Birdsall Co. 17 S. D. 350, 96 N. W. 703.

There is no authority for allowing the expense of a surety bond on appeal, as costs or disbursements. Ellis v. Wait, 4 S. D. 504, 57 N.

W. 232; Novotny v. Danforth, 9 S. D. 412, 69 N. W. 585; 5 Enc.
Pl. & Pr. 110; Bick v. Reese, 52 Hun, 125, 5 N. Y. Supp. 121.

The amount involved on the appeal was less than $300, and plaintiff
printed his abstract and brief at his own risk. Code Civ. Proc. 1905,
§ 7230; Ingwaldson v. Skrivseth, 8 N. D. 544, 80 N. W. 475; Black
v. Minneapolis & N. Elevator Co. 8 N. D. 96, 76 N. W. 984; Casseday
v. Robertson, 19 N. D. 574, 125 N. W. 1045; Engholm v. Ekrem,
18 N. D. 185, 119 N. W. 35; Whitney v. Akin, 19 N. D. 638, 125
N. W. 471; Wold v. South Dakota C. R. Co. 23 S. D. 521, 122 N.
W. 583; Buehler v. Staudenmayer, 146 Wis. 25, 130 N. W. 955, 131
N. W. 986.

*Bangs, Cooley, & Hamilton,* for respondent.

The North Dakota cases cited by counsel were decided under § 5631
of the Code of 1895. That section was amended, and is now § 7230,
Rev. Codes of 1905. Under the provisions of § 7178, Rev. Codes, the
word "may," as used in § 7173, means "must."

BRUCE, J. (after stating the facts as above). Appellants' first ob-
jection is to the allowance of the item of $125.50 "for making tran-
script, including exhibits and binding." Their first contention is that
these costs or disbursements are provided for in ¶ 3 of § 7174, Rev.
Codes 1905, where an allowance of "$5 for a statement of the case and
$2 more where it exceeds 50 folios," is provided for. In this they
are clearly in error. Paragraph 3 of § 7174 relates to what are com-
monly called and known as "statutory costs," and not to disburse-
ments, and has no application to the charge before us. This is provided
for in § 7177, Rev. Codes 1905, which provides that "in all actions
and special proceedings the clerk must tax as a part of the judgment
in favor of the prevailing party his necessary disbursements, as fol-
lows: The legal fees of witnesses and of referees and other officers, the
necessary expenses of taking depositions and of procuring evidence nec-
essarily used or obtained for use on the trial, the legal fees for publica-
tion when publication is made pursuant to law, and the legal fees of
the court stenographer for a transcript of the testimony when such
transcript is used on motion for a new trial or in preparing a state-
ment of the case." Counsel lays emphasis upon the words, "for mak-
ing transcript, including exhibits and binding," used in the bill of costs

and disbursements, and states that "it is not a transcript or stenographer's minutes, but it is for *making a transcript,* including exhibits and binding," but we can see no merit in the contention. The affidavits filed in the case clearly show that the amount claimed was actually paid out, and we have no doubt that it was reasonably necessary. We also have no doubt that such disbursements were contemplated by § 7177, Rev. Codes 1905.

Appellants' next objection is to the allowance of $55.30 for stenographer's fees for taking testimony. He says: "As appears from the face of the record, this case was an equity case. It was tried before the court, who ordered the evidence to be taken by the stenographer of the tenth judicial district. There was no justification for charging up the fees of an official who was a court stenographer and who under the law was doing that which the judge was required to do, take the testimony, and therefore that item was improperly included in the bill of costs." We can, however, hardly see the force or the logic of this objection. We are not here called upon to decide whether the case was one in which a referee could or should have been appointed by the court, for the parties expressly stipulated that such an appointment could be made. We find in the record, indeed, no objection to the reference, but, on the other hand, in the statement of the case the following statement: "In accordance with the stipulation hereto attached, entered into and between the parties at Dickinson, Stark county, North Dakota, agreeing that Mr. Geo. Schneupper, court reporter of the sixth judicial district, North Dakota, shall take and *report* the testimony in the above-entitled case, hearing was had on the 18th and 19th day of March, 1907, at Dickinson, North Dakota, and the testimony was taken by the said Geo. Schneupper at that time." We also find the following: "This case having been in the first instance referred to a referee to take testimony and report, and a portion of the said testimony having been taken before the said referee, and a portion before a notary public in Minneapolis, it is now agreed between all parties in open court that the evidence is before the court with the same force and effect as though originally introduced before the judge of this court in open court." The first stipulation is not copied into the abstract, though the second one is, but that both stipulations were made appears in the original abstract, and is beyond dispute.

From them it appears that the stenographers, both at Dickinson and Minneapolis, were not merely to take but to report testimony; in other words, they were referees as well as stenographers. The abstract also shows that two days were consumed in taking the testimony at Dickinson before the court stenographer, Geo. Schneupper, and four days in taking testimony at Minneapolis before the stenographer there, Miss Smith. The testimony taken at Minneapolis consisted of some nine hundred folios. The trial judge allowed $17.80 for taking and reporting the testimony at Dickinson, and $37.50 to Miss Smith for taking and reporting the testimony taken at Minneapolis. It will be seen that the above allowance did not equal the $10 per diem, which may be allowed to a referee for his services merely as a referee. It also came clearly within the 1 cent for every ten words allowed by § 2608, Rev. Codes 1905, for taking testimony. Under the stipulation, the stenographers acted both as stenographers and as referees to report testimony. Section 2608, Rev. Codes 1905, provides that referees shall be entitled to charge the following fees: (1) For copying any papers or instruments or taking testimony, for every ten words 1 cent; (2) swearing the witnesses, 10 cents; (3) making report of facts or conclusions of law or upon exceptions, for every ten words, 1 cent; (4) and such additional fees as the court shall allow, not exceeding in any one case the sum of $10 per day, except by agreement of the parties.

We are unable to see that the trial court in any way abused his discretion in the allowance that he made in this case.

When we come to the allowance of $40 for appeal bonds, we are not quite so well satisfied. The giving of surety company bonds, and the taxation of not more than 1 per cent per year on the amount of the penalty or *liability* as disbursements on appeals, seem to be fully authorized by §§ 4456, 4457, Rev. Codes 1905. In the bonds in question, however, we are not informed as to penalty, and the statute, in the absence of such definite penalty, merely provides for 1 per cent of the liability. The liability in one case could hardly have been beyond $660, while in the other it could hardly have been beyond $360. It may probably have been that a surety company would not split hairs in such matters, and would decline to issue less than a $1,000 bond; but the statute seems plain upon the point that

it is the liability alone which will control where no penalty is actually agreed upon. The allowance, therefore, should have been $20.40, and not $40. We are fully satisfied, however, that this allowance of $20.40 should be made. Counsel for appellant, we know, contends that the bonds were cost bonds merely, that their obligation was only $250. In this, however, he is in error. That the bonds were supersedeas bonds as well as cost bonds is plain from a perusal thereof. The obligations of the bonds were as follows: "Now therefore, we, the undersigned, Investors' Syndicate, as principal, and Fidelity & Deposit Company of Maryland, as surety, do jointly and severally undertake, promise, and agree to, and with the above-named John F. Beyer, that the said Investors' Syndicate will, if the said judgment appealed from or any part thereof is affirmed, pay the amount directed to be paid by said judgment, or the part of said judgment as to which said judgment is affirmed, if it is affirmed only in part, and all damages awarded against the said appellant on said appeal; and we further undertake and agree that the said appellant will pay all costs and damages that may be awarded against it on said appeal not exceeding the sum of $250.00."

Counsel also contends that §§ 4456, 4457, are unconstitutional in so far as they permit an allowance for the cost of surety company bonds, and contends that since no allowance is made by the statute for the payment of the cost of bonds when given by private individuals, the clauses referred to are void as class legislation. We do not, however, so hold. Our Constitutions, state and Federal, nowhere in terms use the words, "class legislation." They merely provide that "no special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens." N. D. Const. art. 1, § 20. All that the 14th Amendment to the Federal Constitution provides is that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." "Class legislation" is not synonymous with "classification," says the Supreme Court of the United States in the case of Chicago, B. & Q. R. Co. v. Iowa (Chicago,

B. & Q. R. Co. v. Cutts) 94 U. S. 155, 24 L. ed. 94, "is not necessarily discrimination, and a reasonable discretion in such matters has generally been conceded by the courts." See also McAunich v. Mississippi & M. R. Co. 20 Iowa, 342; Kniseley v. Cotterel, 196 Pa. 614, 50 L.R.A. 86, 46 Atl. 861. "A law is general, not because it embraces all of the governed, but when many are embraced in its provisions and all others may be, when they occupy the position of those who are embraced." Hawthorn v. People, 109 Ill. 302, 50 Am. Rep. 610. We have yet to find that there is in North Dakota a personal bonding industry; that is to say, any body of men who, as individuals, are engaged, or wish to be engaged, in the industry of giving bonds for compensation. When such a class arises it may be well to consider the question of class legislation in relation to statutes of the kind before us, and it would seem that the protest should come from the members of that class. See also opinion in Holden v. Hardy, 169 U. S. 366, 42 L. ed. 780, 18 Sup. Ct. Rep. 383; Vermont Loan & T. Co. v. Whithed, 2 N. D. 82, 94 N. W. 318; Edmonds v. Herbrandson, 2 N. D. 270, 14 L.R.A. 725, 50 N. W. 970.

After all, the intention of the legislature seems to have been to see that satisfactory bonds should and could be furnished in the numerous cases where the giving of bonds are required by our statutes. We have no law making a bond a lien upon real property, and the unsatisfactory nature of personal bonds has been universally recognized. The owner of real property to-day may be without any to-morrow; especially is this true in the migratory West. So, too, the legislature may well have taken cognizance of the fact that it is often difficult to get such personal bonds. It may have, therefore, and no doubt did, recognize the need of some agency that might meet the contingency, and have desired not only to make the surety company bond a valid obligation, but one that could be readily and easily obtained. The day, we believe, has gone by when the courts should explore the upper ether in order to discover imaginary discriminations. We do not believe that the sections in question can be attacked upon this ground.

As far as the allowance of $534.50 for printing briefs and abstracts on appeal is concerned, we think the appellant in this case has no grounds for complaint. We are of the opinion that there was altogether too much testimony taken in the case, and that the costs are

25 N. D.—32.

absurdly disproportionate to the amounts involved. We cannot see, however, how the respondent can be blamed therefor, or that it could very well have escaped incurring the expense. On an examination of the abstract, indeed, we find that of the 1052 pages 800 are devoted to a reproduction of the pleadings, direct testimony, and cross-examination, and exhibits of the appellants herein. The appellants in this retaxation appeal obtained the judgment in the court below in the principal action from which the appeal was taken. The lower court in the original proceedings disallowed the plea of *res judicata,* and the case was tried upon its merits. It was appealed to this court on a trial *de novo* also on its merits. If any of these pleadings, testimony, and exhibits had been omitted by appellant in the original appeal, we have every reason to believe that the appellant in the retaxation matter before us would have strenuously objected and filed an additional abstract. At any rate, it would generally seem that an appellant has a right to believe that the other party considers his own testimony competent and necessary. It is worthy of notice, indeed, that prior to the hearing of the original appeal, counsel moved for a dismissal of the appeal, because a voluminous book exhibit had not been incorporated in the record. It is true that this court decided the case on the original appeal on the plea of *res judicata;* but as we have said, the trial court did not, and all of the issues in the proceedings were therefore raised *de novo* upon the appeal. The cost of printing appellants' pleadings, testimony, and exhibits alone would, if the legal rate had been charged, have amounted to $800. We do not believe that the charge of $534.55 for the whole of the abstract and briefs was unreasonable. The case is but one of many where, under the license permitted by the so-called Newman law, counsel in the heat of the conflict wander far and wide in the introduction of their testimony, regardless of its competency and relevancy or of the strict rules of evidence. As long as the Newman law remains upon the statute books, and the trial courts are shorn of their power to rule out incompetent and irrelevant evidence, we see no escape from bills of costs and disbursements such as those before us, unless indeed counsel themselves will limit their examination of witnesses within the bounds that the rules of strict practice prescribe.

Nor can we see that the trial court abused his discretion in allowing

the statutory costs of $10, and $3, in this case, and provided for by § 7174, Rev. Codes 1905. We realize that the mortgage provided for an attorney's fee of $50, and that that fee was also retaxed. The petition in intervention, however, was not a defense as against the mortgage, and was not filed on behalf of the mortgagor or his privies. It was filed by an outsider, who claimed that the mortgage had been assigned to him and was his. The costs incurred in resisting the petition in intervention, therefore, were not incurred in the process of foreclosure, but merely in litigating a contest between the intervener and the mortgagee as to the right and title to the mortgage. We, however, see no reason for allowing the fee of $4 for additional defendants, as the intervener was not concerned with them. As against the mortgagor the plaintiff is entitled to tax the sum of $50 (attorneys' fees) only, as against the intervener the statutory costs of $13 only.

The judgment of the District Court is reduced by the sum of $23.60, and in all other respects affirmed.

No costs or disbursements will be allowed to any of the parties upon this appeal.

### On Application for a Rehearing, Filed Sept. 2, 1913.

BRUCE, J. The petition for a rehearing does not change our views in this case and the same is denied. We, however, wish to suggest as another justification for the allowance of the $46.75 for "copying exhibits used on appeal to the supreme court," and paid to the clerk of the district court, the portion of § 7177, Rev. Codes 1905, which, among other things, provides that the clerk may tax "the legal fees of witnesses and of referees and of *other officers;*" paragraph 11 of section 2584, Rev. Codes 1905, which provides that the clerk may charge "for making certified abstracts of any judgment or certified copy of any judgment, order, or other papers filed or recorded in his office, for the first four folios fifty cents; for each additional folio, ten cents;" and Supreme Court Rule No. 15, 10 N. D. XLVII, 91 N. W. IX, which provides among other things, that "Documents on file in the case and original exhibits, offered in evidence, or properly certified or authenticated copies of such documents and exhibits, shall be attached, and must be made a part of the statement of the case."