JOHN F. BEYER, Respondent, v. NORTH AMERICAN COAL & MINING COMPANY, Herbert Williams, L. V. Williams, A. E. Wolpert, D. C. Wolpert, A. Maud Wolpert, J. L. Trevillyan, F. P. Nicoll, J. L. Ludwig, John E. Tappen, and Investors Syndicate, a Corporation, Defendants and Appellant.

(173 N. W. 782.)

**Mortgages — redemption — fraudulent mortgages — rights of redemption.**

The Investors Syndicate procured a fraudulent and void mortgage from the North American Coal & Mining Company. One Beyer was a stockholder in the latter company. He had paid several years' taxes on the corporate property. He maintained an action and recovered judgment for the taxes, and sold some of the corporate property under execution sale to satisfy the judgment. The Investors Syndicate attempted to redeem from such foreclosure, and paid to the sheriff the amount for which said property was sold on foreclosure sale, and received a sheriff's certificate and sheriff's deed. Beyer brought an action to recover for money expended in various suits theretofore brought against the corporation and in defending the interest of the stockholders and his own interest in the corporate property; in this action the Investors Syndicate appeared, answered, and claimed title to the property involved, under and by virtue of the alleged redemption. Beyer, in this suit, tendered into court the full amount which the Investors Syndicate had paid for the alleged redemption; held that the Investors Syndicate were not redemptioners. The basis of their redemption was the fraudulent and void mortgage; it afforded no right of redemption. The alleged redemption was a nullity and the Investors Syndicate acquired no right, title, or interest in the property attempted to be redeemed. Under such alleged redemption, it held it as trustee ex maleficio for the North American Coal & Mining Company.

Opinion filed July 7, 1919.

Appeal from the District Court of Stark County, North Dakota, W. C. Crawford, J.

Affirmed.

Bangs, Hamilton, & Bangs and W. J. Mayer, for appellant.

"If the property is not redeemed according to law, the purchaser or his assignee, or the redemptioner, as the case may be, is entitled to a sheriff's deed of the property." Comp. Laws 1913, §§ 7757, 7763.

Sannon at least became, as between himself and Williams, a redemptioner and entitled to all the rights of a redemptioner. It has been so held by several courts. N. D. Horse & Cattle Co. v. Serungard, 17 N. D. 446, 117 N. W. 453; McDonald v. Beatty, 10 N. D. 511, 83 N. W. 281; MacGregore v. Pierce, 17 S. D. 51, 95 N. W. 281; Roose v. Gove, 32 Colo. 533, 77 Pac. 246; Hare v. Hall, 41 Ark. 372; Smith v. Jackson, 153 Ill. 399, 39 N. E. 130; Harvey v. Krost, 116 Ind. 268, 19 N. E. 125; Carver v. Howard, 92 Ind. 173.

The question presented by plaintiff was settled in this state in 1901 by the opinion handed down in the case of McDonald v. Beatty, 10 N. D. 511, 83 N. W. 281.

That such effect follows the retention of redemption money is well settled, and in cases where the persons redeeming did not possess the strict statutory right of redemption. See Carver v. Howard, 92 Ind. 173; Hare v. Hall, 41 Ark. 372; Re Eleventh Ave. 81 N. Y. 436; 3 Freeman, Executions, 3d ed. 317; McDonald v. Beatty, 10 N. D. 511, 83 N. W. 281.

Inadequacy of price does not destroy the validity of an execution sale. It is a circumstance in favor of those who have the right to redeem. Power v. Larabee, 32 N. D. 502, 57 N. W. 789.

M. A. Hildreth, for respondent.

The law allows nothing to be gained by fraud. Hennequin v. Naylor, 24 N. Y. 139; Nichols v. Michael, 23 N. Y. 265; Peter v. Wieting, 49 Barb. 315; Bigelow, Frauds, p. 493.

This court being a court of equity will not permit this property to go to the Investors Syndicate, but will treat it as the district judge did, a trustee ex maleficio. Ahrens v. Jones, 169 N. Y. 555.

To the same effect, see the case of Ziser v. Cohn, 207 N. Y. 407. At page 421 the learned judge says: "If relief is now refused the plaintiff against this fund he will be remediless, not through any fault

of his own, but by the fraudulent acts of those whom the appellants claim. Equity, therefore, in the exercise of its comprehensive jurisdiction over frauds, should mold its relief to meet the exigencies of the case, and fix a lien upon this fund in favor of the plaintiff." Citing decisions.

"Fraud is proven when it is shown that a false representation has been made knowingly, or without belief in its truth, or recklessly without caring whether it be true or false." That doctrine is supported by Krause v. Bussacker, 105 Wis. 350; Rogers v. Rosenfeld, 158 Wis. 285; Elkford Oil & Gas Co. v. Jennings, 84 Fed. 839; Van Epps v. Van Epps, 9 Paige, 238.

It is settled by this court that the Investors Syndicate held the mortgage, which was the basis for this redemption, in fraud. Its redemption certificate was false. It perpetrated fraud upon the officers of the law in making the redemption that it did. Equity will relieve parties from such a situation, and will treat the Investors Syndicate as a trustee ex maleficio. Brown v. Lynch, 1 Paige, 147; Howland v. Scott, 2 Paige, 406; Freelove v. Cole, 41 Barb. 318; 2 Pomeroy, Eq. Jur. 628; 3 Pomeroy, Eq. Jur. § 1053, and cases cited in notes; Piper v. Hoard, 107 N. Y. 80; Third Nat. Bank v. Stillwater Gas Co. 36 Minn. 75, 30 N. W. 440; Farmers & Traders Bank v. Kimball Mill. Co. 47 N. W. 402; Sant v. Perronville Shingle Co. 146 N. W. 217.

A court of equity will deal with property of the character that we have here and administer justice between the parties regardless of forms of law. Murphy v. Teutsch (N. D.) 35 L.R.A.(N.S.) 1139, Opinion by Crawford, Judge. Hedlin v. Lee, 21 N. D. 500, Opinion by Fisk, Judge.

"The holder of the legal title to land will in equity be charged as trustee, where it was acquired by fraud and under such circumstances as render it inequitable for him to retain it." Norton v. Neder, Fed. Cas. No. 10,351; Mfg. Co. v. Bradley, 105 U. S. 175–180; Graffam v. Birgess, 117 U. S. 180–192; Williams v. United States, 138 U. S. 514–517; Camp v. Boyd, 229 U. S. 530.

GRACE, J. Appeal from the district court of Stark county, W. C. Crawford, Judge.

This appeal is from the judgment as amended. It appears that,

in addition to other relief granted to him by the judgment, there was entered a personal judgment against each of the defendants. The judgment was amended. As amended, it was practically the same as the judgment originally entered, with the exception there was no personal judgment entered against any of the defendants excepting the American Coal & Mining Company.

This case is another phase of the litigation which has been in progress for about twenty years between the same parties. Other cases heretofore litigated were: Beyer v. Investors' Syndicate Co. 31 N. D. 247, 153 N. W. 476; Investors' Syndicate v. Letts, 22 N. D. 452, 134 N. W. 317; Beyer v. North American Coal & Min. Co. 37 N. D. 319, 163 N. W. 1061.

On the 28th day of December, 1911, the Investors Syndicate commenced an action to foreclose what is termed the cumulative mortgage on the N.$\frac{1}{2}$ of section 21 and the S.E.$\frac{1}{4}$ of section 16, T. 139, R. 94, Stark county, North Dakota. In that action it demanded judgment against the North American Coal & Mining Company for $3,000 and for a decree of foreclosure; in that action the North American Coal & Mining Company defaulted. John F. Beyer applied to the court for permission to intervene, which was granted. The Investors Syndicate answered the petition of intervention, and issues were duly joined in that case. Under the issues joined, the case was tried to the court, and the alleged mortgage for $3,000, dated the 20th day of March, 1899, which covered the land in question, was by the court declared to be fraudulent and void and against the interest of the stockholders of the North American Coal & Mining Company and against the interest of John F. Beyer as a stockholder in that corporation. In that case it was determined from the testimony therein that Williams, who was the promoter and president of the coal company, and Tappen, the secretary of the Investors Syndicate, were business associates before the organization of the coal company; that when the coal company was first organized, Tappen received stock therein for which he never paid and which was canceled from the books of the company; and that at one time Tappen was elected an officer of the coal company; that Williams took three fifths of the stock of the coal company for nothing excepting his services and did nothing to develop the coal mines; that he either borrowed or pretended to borrow $1,118.43 of the Investors

Syndicate, of which Tappen was secretary, and assigned some of his stock in the coal company as collateral; that at a meeting of the coal company thereafter, held at Williams' house, Beyer not being present nor invited thereto, a mortgage in that sum. was authorized to be given by the coal company upon its entire assets. At the same meeting, Williams and his wife voted themselves back salaries, which had not theretofore been authorized by the company; that upon the execution of the mortgage, Williams took proceeds thereof from the Investors Company and a few hours later paid it back to the Investors Syndicate to pay his own personal note and to take down the stock which he had put up as collateral. The coal company got none of the money.

In the trial of that case in the district court, the following findings of fact were made: "I further find that the North American Coal & Mining Company and Herbert Williams and his said wife, L. V. Williams, and his said treasurer, F. P. Nicoll, have had full and complete knowledge of the fraudulent purposes for which said mortgage and note was made and executed on the said 20th day of March, 1899, and that the plaintiff herein, the Investors Syndicate, has at all times had full and complete knowledge that said note and mortgage was fraudulently made, executed, and delivered as the pretended act of said North American Coal & Mining Company, and was without any consideration whatsoever in the premises, and was not the act of the said North American Coal & Mining Company."

Another finding was to the effect that said mortgage, note, and coupon notes are fraudulent and void, and have been at all times fraudulent and void and without consideration whatsoever, and are not a lien upon the lands herein described. A decree was entered in the trial court in accordance with the findings of fact, and the conclusion of law was that the note and mortgage were null and void and taken and received by the Investors Syndicate with full knowledge that they were without consideration and were fraudulent and void as to stockholders of said company and as to the North American Coal & Mining Company. A judgment of dismissal of that action was entered by the trial court; costs were awarded in favor of John Beyer, and an appeal from that judgment was taken to this court on the 23d day of February, 1914, and the judgment of the district court of Stark county was affirmed. 31 N. D. 259, 153 N. W. 472. The court in that opinion

said: "Without setting forth more of the testimony which, as we have already said, is voluminous, we announce it as our opinion that the Investors Syndicate Company through its secretary Tappen and the officers of the coal company, principally Williams, entered into a fraudulent agreement to rob the coal company of its entire assets for the purpose of defeating the rights of the minority stockholders. We are further of the opinion that in so doing the officers of the coal company exceeded their authority in the issuance of the mortgage, and that the same was absolutely void, and was so known to the Investors Syndicate Company at the time they pretended to have purchased it."

On February 26, 1912, Beyer, who had paid taxes for several years upon the land in question, commenced an action against the North American Coal & Mining Company and Producers & Consumers Cooperative Company to have the question of the liens and taxes which he had paid on the property determined to be liens, and to recover judgment for the same. The Investors Syndicate became parties to that action, and, in addition to entering a general denial, claimed that it had an estate, interest, and lien on the N.W.¼ of section 16 and the land which we have heretofore described by virtue of what is known as the Dana mortgage and by virtue of the cumulative mortgage above referred to. In the trial of that action, the court found that Beyer was the owner of the judgment of record in an action in the United States court of North Dakota, against Letts, the Producers & Consumers Company, and the North American Coal & Mining Company, for the sum of $320, and that it was a lien in his favor against said lands for that sum. The trial court found that Beyer had paid certain taxes, and in all he was declared by the court to be entitled to a lien upon said land for the sum of $984.64, together with costs, in all amounting to $1,046.92. The judgment was entered on the 26th day of August, 1913, which was about the time when judgment was entered against the Investors Syndicate, dismissing its foreclosure action against the North American Coal & Mining Company. On the same day that judgment was entered in Beyer's favor, an execution was issued upon the judgment, and the three quarters of land first described were levied upon and sold at sheriff's sale to satisfy such judgment, and was bid in by Beyer, and a sheriff's certificate issued to him. That certificate was recorded with the register of deeds on the 12th day of November, 1913.

On the 23d day of October, 1914, shortly before the time for redemption expired, the Investors Syndicate endeavored to redeem from that execution sale. They based their right to redeem upon the cumulative mortgage. At the time of the alleged redemption, the appeal of the Investors Syndicate from the judgment dismissing the foreclosure action upon the cumulative mortgage from the North American Coal & Mining Company was pending in the supreme court of North Dakota; that appeal was determined July, 1915, following the redemption. At the time of the alleged redemption, the sheriff of Stark county executed and delivered to the Investors Syndicate a certificate of redemption in due form, which was filed for record in the register of deeds of Stark county on the 23d day of October, 1914, and on the 2d day of November, 1915, more than a year after the redemption, the sheriff of Stark county executed to the Investors Syndicate a sheriff's deed of said premises, which was filed in the office of the register of deeds on the 30th day of August, 1916. The sheriff remitted redemption money to the attorney for Beyer. Beyer received the redemption money and retained it until commencement of this action, when it was legally and duly tendered the defendants, and such tender has ever since been kept good. The amount tendered was $1,200. This action was brought by Beyer against the North American Coal & Mining Company to recover back the money which he had paid out in all the litigation we have mentioned. Beyer takes the position that it was necessary for him to have entered into all the litigation in order to protect the interest of the North American Coal & Mining Company and his own interest and investment therein as a minority stockholder. He recovered judgment for moneys paid out for that purpose in the sum of $5,978.97, and the judgment was decreed to be a prior lien upon the S.E.¼ of section 16 and N.½ of section 21, township and range above mentioned. It is further adjudged and decreed that the land be sold to satisfy the amount of that judgment. The judgment in this action decreed that the Investors Syndicate had no right, title, interest, claim, or demand of any kind or nature in and to said land above described under said redemption and sheriff's deed.

This brings us to the final question in this case: Was the redemption attempted to be made by the Investors Syndicate of any force, effect, or validity? If it were, then they have by that redemption,

and the issuing to them of the certificate of redemption and sheriff's deed, become the absolute owners of said land by reason thereof. If the redemption was not as a matter of law made, if the Investors Syndicate had no legal right to make a redemption, then their attempted redemption, and all the acts they did with reference thereto, are a mere nullity and are of no legal force nor effect.

Section 7753, Compiled Laws of 1913, declares who may redeem where property is sold subject to redemption. Under that section, redemption may be made: (1) By the judgment debtor or his successor in interest; (2) by a creditor having a lien by judgment, mortgage, or otherwise on the property sold or on some share or part thereof *subsequent* to that on which the property was sold. If the Investors Syndicate had any right to redeem, such right was based upon and arose from what is termed the cumulative mortgage. It will be remembered that the cumulative mortgage, prior to the time of the alleged redemption, had been declared fraudulent and void by the trial court of Stark county; that appeal had been taken from the judgment in that case to the supreme court, and it was during the pendency of that appeal that the alleged redemption was made. The theory of the defendants is that, notwithstanding such mortgage had been declared fraudulent and void by the trial court, it nevertheless remained a lien upon the land until the appeal from the judgment was finally disposed of in the supreme court; that it was, therefore, sufficient to support the redemption; that the mortgage pending the appeal still remained a lien upon the land sufficient to authorize the defendants to make such redemption. In other words, the defendants, in effect, claim that the mortgage was at all times not fraudulent until the trial court declared its invalidity on the grounds above mentioned, and that it still remained a lien until the final disposition of the case.

We are of the opinion, however, that this view is erroneous and unsound. The fact is, the mortgage never had any validity; it never became a lien against the land in question,—it never was of any legal force nor effect and the defendants at all times knew this,—it was a party to the fraudulent mortgage,—it knew when it took the mortgage it was fraudulent and void. Every stockholder of the Investors Syndicate knew or must be held to have known that it was fraudulent and void. It was in no way binding nor effective as a lien upon the

property, and in no way bound nor affected nor became an obligation of the North American Coal & Mining Company or any stockholder thereof. The decree of the trial court declaring the mortgage to be fraudulent, void, and invalid, did not give the Investors Syndicate any new knowledge. All the facts in that decree were known in substance by the Investors Syndicate at all times. The decree of the trial court simply declared the invalidity of the mortgage on the grounds stated, but the invalidity existed from the inception of the mortgage, and the defendants knew it. The mortgage being void from its inception for fraud and the defendants knowing it, its mortgage was not a lien upon the land; it therefore had no mortgage with which to make redemption; it was not a redemptioner because it possessed no valid mortgage under which it could make redemption. It had no authority to make redemption, and its attempt to do so was fruitless; it was not a redemptioner.

Much has been said about the affidavit of Tracy R. Bangs, the attorney for defendants. This affidavit, so far as showing any right in the defendants to redeem, is of no effect. The affidavit cannot make the fraudulent and void mortgage valid. The cumulative mortgage to the Investors Syndicate never was a mortgage upon the land in question. It was fraudulent and void from its inception, and the defendants knew it. It is worse than folly to contend that any right of redemption or property right may be acquired or based upon that mortgage. In order for one to be a redemptioner within the statute, he must be the holder of a valid, subsequent mortgage or lien to that from which redemption is made.

There is another reason why, as a matter of law, the defendants were not redemptioners. The alleged mortgage of the Investors Syndicate was dated March 20, 1899. The judgment upon which the land was sold was entered on the 26th day of August, 1913. If the mortgage were valid, it would be a prior, not a subsequent, lien upon the land to the judgment. The defendants, in order to be redemptioners within the statute, must have a lien by judgment, mortgage, or otherwise on the property sold or on some share or part thereof *subsequent to that on which the property was sold;* the defendants' alleged mortgage being a prior lien, and not a subsequent one, it was not a qualified redemptioner under the statute, and had no right to redeem, and for this additional reason its attempted redemption was a nullity.

The defendants, in effect, claim there is no evidence of any fraud in the acquisition by the Investors Syndicate in making the redemption and in acquiring sheriff's certificate and sheriff's deed to the property in question. In this the defendants are clearly mistaken. The very basis of the redemption, the cumulative mortgage, was fraudulent and void. The right to redeem is based upon that mortgage. The defendants at all times knew, or must be held to have known, that mortgage to be fraudulent and void. It was later declared to be fraudulent and void by the court. If the mortgage were fraudulent and void, every act subsequent to the mortgage with reference thereto, and every subsequent alleged right based thereon, carries with it the taint of such fraudulent mortgage, where the subsequent acts have been performed and alleged rights acquired by those who were a party to the fraudulent and void mortgage; it is impossible for the defendants to separate the alleged redemption from the fraudulent and void mortgage. This court has said in the case of the Investors' Syndicate v. North American Coal & Min. Co. 31 N. D. 280, 153 N. W. 472: "The Investors Syndicate Company, through its secretary Tappen and the officers of the coal company, principally Williams, entered into a fraudulent agreement to rob the coal company of its entire assets for the purpose of defeating the rights of the minority stockholders."

The court in that case had under consideration the very mortgage which is claimed by defendant to be the basis of its right to redeem. This alleged redemption has as its only basis the fraudulent agreement so strongly condemned by this court in that case. That the defendants acquired no legal right or interest in said land by their attempted redemption is too plain to require further comment. The trial court properly held that they were trustees *ex maleficio* for the benefit of the North American Coal & Mining Company.

The defendants cite as authority to sustain their position the case of the North Dakota Horse & Cattle Co. v. Serumgard, 17 N. D. 466, 29 L.R.A.(N.S.) 508, 138 Am. St. Rep. 717, 117 N. W. 453. That was a decision of this court. In that case, Sannan was assignee of four mortgages, which were prior liens to the one which was foreclosed and from which redemption was made by him, the basis of his redemption being the prior liens. This court held in that case, though Sannan was not a statutory redemptioner, he having redeemed and

the holder of the certificate having made no objection and having re-
ceived the money, that Sannan became as between himself and the
certificate holder a redemptioner. That case is clearly distinguishable
from the one at bar. In that case the mortgages, which were prior
liens under which redemption was made, were valid and subsisting
liens,—their legality was unquestioned. Those mortgages were not,
as the one involved in this case, fraudulent and void. In that case the
court was dealing with valid and subsisting good-faith mortgages. In
this case we are dealing with a fraudulent and void mortgage. The
principle in that case in the respect we have discussed has no applica-
tion to a case such as this. This is a case of equity. The defendants
are required to come before the court of conscience with clean hands.
This they failed to do when they ask this court to grant them relief
and to protect certain rights, the origin and source of which is a fraud-
ulent and void instrument, viz., the cumulative mortgage.

There is another reason why the judgment of the trial court should
be sustained. It is found in the 17th finding of fact of the trial court,
where it in substance said: I further find as a fact in this cause
that at the time of making the so-called redemption of the sales made
in behalf of John F. Beyer, as plaintiff, against the Investors Syndi-
cate et al., as defendants, in which certificates of sale were issued to
John F. Beyer for the land in question, the Investors Syndicate, de-
fendant herein, had no right, title, interest, claim, or demand of any
kind whatsoever upon the lands and premises sought to be redeemed;
that the acceptance of the money paid to the sheriff of Stark county
and subsequently paid to John F. Beyer was paid under a misappre-
hension and mistake.

We think the finding which we have set forth in substance is well
sustained by the evidence. It is not necessary to set forth nor dis-
cuss the evidence; it is sufficient to say it sustained the finding of the
trial court. If the redemption money was paid to Beyer and re-
ceived by him while laboring under the misapprehension of fact and
mistake, he waived none of his rights by so receiving it. He has re-
turned the money and tendered it to the Investors Syndicate in open
court. The trial court found that the $1,200 would cover the amount
of money which the Investors Syndicate paid for the sheriff's deed.

The plaintiff recovered judgment for the costs and expenses he had

been to in all of the litigation. The result of his expending such money was the protection of the interest of the other stockholders as well as his own interest in the North American Coal & Mining Company. He has been awarded by the trial court judgment for all of the money so expended, in the sum we have above stated, and was awarded a lien of all the property of the North American Coal & Mining Company. In awarding such judgment and lien, the trial court acted legally and properly. Internal Improv. Fund v. Greenough, 105 U. S. 527, 26 L. ed. 1157. The money which the defendant paid for the alleged redemption has been legally tendered to it. It is entitled to nothing else in this action.

The judgment of the trial court is in all things affirmed. The respondent is entitled to the statutory costs of appeal.

BIRDZELL, J. I concur on the ground that, assuming that the redemption was good, the property redeemed should, for the reasons assigned in the principal opinion, be held subject to the equities of the respondents.

CHRISTIANSON, Ch. J. (concurring specially, and in part dissenting). I concur in the result reached, but do not concur in the reasoning adopted, in the majority opinion. That opinion in effect holds that the redemption made by the Investors Syndicate was unavailing, and conferred no rights upon it, because it was not a proper redemptioner. With this I do not agree. It is well settled that "if a redemption made by a disqualified person is acquiesced in by the purchaser or other person from whom redemption is made, it will estop such person, after he has received the redemption money, from denying the validity of the redemption." 3 Freeman, Executions, 3d ed. § 317. "The holder of the sheriff's certificate and the person redeeming are the only persons concerned in the regularity of the redemption. The owner of the certificate may deal with it as he sees fit. He may sell or assign it, or he may retain it and insist that anyone who wishes to secure his right thereunder by redemption shall do so only by strictly complying with the statute, or 'he may waive his right to require exact and formal observance of the statutory mode, and his acceptance of the redemption money will be such a waiver.'" McDonald v. Beatty,

10 N. D. 511, 518, 88 N. W. 281. But in this case the trial court found that the plaintiff, Beyer, accepted the money through misapprehension and mistake. And in view of all the facts and circumstances in the case I believe that this is true, and that the court properly relieved against the mistake by permitting Beyer to return to the Investors Syndicate the amount of the redemption moneys with interest.