JOHN F. BEYER, Appellant, v. THE INVESTOR'S SYNDICATE, a Corporation, The North American Coal & Mining Company, a Corporation, Herbert Williams, Myra L. Williams, D. C. Wolpert, A. E. Wolpert, A Maud Wolpert, J. L. Treyillyan, J. L. Ludwig, F. B. Nicholl, John E. Tappan, and The Producers & Consumers Co-operation Company, a Corporation, Respondents.

(182 N. W. 934.)

**Judgment — filing of process and lis pendens held not to confer jurisdiction of res in action to impress lien in favor of stockholders.**

1. In an equitable action *in rem* to impress a paramount lien in favor of a stockholder upon the lands of his corporation for moneys paid in behalf of the corporation and in connection with his stock, necessarily involving upon the allegations of the complaint equitable proceedings *in personam* in order to afford relief *in rem*, jurisdiction of the *res* is not secured by the filing in of a verified complaint, of an affidavit for service of the summons by publication or without the state, and, of a *lis pendens*.

**Corporations — complaint in equitable action in rem to impress lien in favor of stockholder held not to state cause of action.**

2. For reasons stated in the opinion, it is *held* that the complaint, viewed as a proceeding *in rem*, does not state a cause of action *in rem*.

**Corporations — act providing for appointment of resident agent by foreign corporation held repealed.**

3. Section 3192, Terr. Laws 1887 (§ 569, Dak. Civil Code 1877 and chap. 36, Terr. Laws 1885), providing for the appointment of a resident agent by a foreign corporation upon whom service of process might be made was repealed by the N. D. Revised Codes of 1895.

Opinion filed March 17, 1921. Rehearing denied April 26, 1921.

Action in District Court, Stark County, *Crawford*, J., to impress a lien upon lands.

From the order made upon a motion to quash, the plaintiff appealed. Modified and affirmed.

*Melvin A. Hildreth*, for appellant.

A court of equity will impress a trust upon the property in favor of the plaintiff, John F. Beyer, because the assets of the defendant, the North American Coal & Mining Company, consist of these lands and Beyer can follow his money into the land, and the property is subject to his lien for the money advanced. Spokane v. First Nat. Bank, 68 Fed. 982; South Park Comrs. v. Kerr, 13 Fed. 502; Lerr v. Evans, 67 Fed. 677.

The complaint, therefore, states a good cause of action. 97 Fed. 696; 76 Fed. 472.

A court of equity has the power and it is its duty to protect the parties situated as John F. Beyer is. There is no limit to the trust that may arise when complete justice is done. 3 Pom. Jur. 4th ed. § 1053 and cases cited in the notes.

The complaint, therefore, states a good cause of action for equitable relief. 1 Pom. Eq. Jur. 4th ed. § 155 and cases cited in notes; 3 Pom. Eq. Jur. 4th ed. § 1044.

A court of equity will always protect and reach out its hands and control the officers of the corporation, their aiders, and abettors, in seeking to cheat a minority stockholder out of his rights. Continental v. Belmont, 207 N. Y. 13.

*Bangs, Hamilton & Bangs* and *W. J. Mayer,* for respondents.

-The provisions of the Code as to service by publication must be strictly complied with in order to confer jurisdiction. Haley v. Certar, 1 Dak. 504.

The jurisdiction sought to be acquired by publication of the summons is strictly statutory and can be acquired only in the mode prescribed by Dak. Code Civ. Proc. § 104; Soderberg v. Soderberg, 1 Dak. 503.

A strict compliance with the statutes in all respects is required. Coughram v. Markley, 15 S. D. 37, 87 N. W. 2; Dallas v. Luster, 27 N. D. 450, 147 N. W. 93; Roberts v. Enderlin Invest. Co. 21 N. D. 594, 132 N. W. 145.

The affidavit for publication must state the several places of residence of the defendants or that such place of residence is unknown. Jablonski v. Tiesik, 30 N. D. 543, 153 N. W. 274; Krumenagher v. Andis, 38 N. D. 500, 165 N. W. 524; Johnson v. Englehard, 176 N. W. 734.

The title to all the corporal assets is in the corporation, and the stockholders have neither a legal nor equitable title thereto. The ownership of a share of stock is but the ownership of the right to participate from time to time in the management and net profits of the business. 26 Enc. Law, p. 899.

BRONSON, J. *Statement.*—This cause of action, like the proverbial cat with its many lives, again is presented to this court as a memorial,

as it were, to show the perplexities and delays in litigation. Some twelve cases, covering a period of time from 1906 to the present, are to be noted wherein controversies between the parties herein are involved. These cases may be cited as follows: 99 Minn. 475, 109 N. W. 1116; (U. S. Dist. Court, 1909, not reported); 22 N. D. 452, 134 N. W. 317; 25 N. D. 490, 142 N. W. 919; 31 N. D. 247, 153 N. W. 476; 31 N. D. 259, 153 N. W. 472; 32 N. D. 542, 156 N. W. 204; 32 N. D. 560, 156 N. W. 203; 37 N. D. 319, 163 N. W. 1061; 42 N. D. 483, 173 N. W. 782; 42 N. D. 495, 173 N. W. 787; 43 N. D. 401, 175 N. W. 216.

In 1906, in the Minnesota case cited, the plaintiff instituted a proceeding to dissolve the defendant coal company, which proceeding was dismissed. In 1909, in the Federal case cited, the court dismissed the petition of the plaintiff herein to set aside the Dana mortgage of $500, assigned to the defendant Investor's Syndicate by the coal company upon grounds of fraud. In 1911, this court (22 N. D. 452) upheld the right of the Investor's Syndicate to foreclose this mortgage, as against the personal claim of the plaintiff herein, as intervener in such action, to defeat such foreclosure upon the ground that he was the owner of such mortgage. In that action the decision of the Federal court was held to be *res judicata* concerning the mortgage. In 1913, this court (25 N. D. 490) affirmed a bill of costs for the foreclosure of such mortgage. In 1915, this court (31 N. D. 247), in an action brought by the plaintiff, Beyer, to determine adverse claims to three quarter sections of the coal company's lands, held that Beyer was entitled to a lien upon such lands for taxes that he had paid thereon. In 1915, again, this court (31 N. D. 259), in an action brought by the defendant Investor's Syndicate to foreclose a mortgage given by the coal company, upon the three quarter sections of land, held that, the plaintiff, Beyer, appearing as intervener, and representing the minority stockholders, the corporation having defaulted in appearance, such mortgage was fictitious and therefore void. In 1916, this court (32 N. D. 542) upon a demurrer to a complaint by Beyer representing the minority stockholders, to enjoin the foreclosure of the Dana mortgage by the Investor's Syndicate, held that the complaint stated a cause of action, and that the plea of *res judicata* was not available against Beyer, because he represented minority stockholders. In 1916, again, this court (32 N. D. 560) affirmed an order of the district court setting aside a sale made upon the judg-

ment rendered in the action to determine adverse claims (31 N. D. 247) by reason of a misdescription therein. In 1917, this court (37 N. D. 319) sustained a demurrer to the answers interposed to the complaint of Beyer seeking to enjoin the foreclosure of the Dana mortgage (32 N. D. 542). In 1919, this court (42 N. D. 483) held that, upon the foreclosure sale of the Beyer judgment for a lien for taxes, etc., as rendered in the adverse claims action, the Investor's Syndicate could not redeem by reason of their mortgage upon the coal land; that such mortgages were null and the redemption made by the Investor's Syndicate was for the benefit of the coal company. In 1919, again, this court (42 N. D. 495) simply held that the trial court did not err in amending its judgment to conform to its order for judgment in the action mentioned, in 31 N. D. 247. In 1919, again (43 N. D. 401), the same judgment under consideration in 42 N. D. 483, was involved. The court held that equity had the power to impose a lien upon the assets of the coal corporation for the costs and expenses of Beyer, incurred in his efforts to save and protect the assets of the coal company. Accordingly, the judgment of Beyer, for approximately $6,000, as a lien upon the three quarter sections of the coal company's land, was upheld.

In March, 1920, plaintiff filed a notice of *lis pendens* in Stark county, claiming a lien for $4,000 upon the three quarter sections mentioned, and therein giving notice of the commencement of an action to impress such land with a lien for such amount prior to any claim or demands of the defendants. Plaintiff also filed in the district court an affidavit, which states that plaintiff and the defendants are all non-residents, and that personal service of the summons cannot be made, with the possible exception of the coal company, which has a resident agent at Dickinson. After the filing of the complaint the summons and complaint in this action were served upon one Folsom, as the agent of the coal company, in Stark county, and upon all of the other defendants by personal service without the state, excepting the defendant co-operative company, which, as a corporation, has ceased to exist. In June, 1920, the defendants, upon notice, appeared specially and moved the trial court for an order quashing and setting aside the attempted service of the summons on the ground that the same was abortive, null, and void. Upon the hearing of this motion, the trial court did not deem it

necessary to pass upon the sufficiency of the service, but held that the complaint did not state facts sufficient to constitute a cause of action, and sustained the motion as if a demurrer to the complaint, with leave to the plaintiff, within thirty days, to plead over. From such order the plaintiff has appealed.

In the record it appears that the coal company, in August, 1895, certified that Mr. Folsom was appointed as its agent, and was authorized to accept service of processes on behalf of the coal company. This certificate was then filed with the secretary of state. Mr. Folsom, in an affidavit, states that he was informed some twenty or twenty-five years ago that it was necessary for the coal company to have a local agent in Stark county upon whom a process might be served. That he informed Mr. Williams that he would accept such appointment. That he never received any appointment or authority to act as agent for the corporation; that he does not know the postoffice address of such coal company, and he has never notified them of the service of any papers that has been made upon him. The attorney for the plaintiff submitted an affidavit to the effect that, in the litigation during the years past, he has always served upon Mr. Folsom as the resident agent of the coal company.

The complaint in this action is long, covering some fourteen typewritten pages. It recites many of the facts that have heretofore been stated in the opinions of this court. The co-operative company is joined as defendant, but the allegation is that it has no corporate standing; that it has neither a body to be kicked nor a soul to be damned. It alleges that none of the stockholders of the coal company have ever paid anything into the treasury of the company, excepting the plaintiff. Upon information and belief, that the Investor's Syndicate and Tappen have acquired and control the majority of the coal company's stock: It recites the conspiracy of the defendants to place bogus mortgages and liens upon the lands of the coal company and to cheat this plaintiff out of any interest in such lands, and the efforts of the plaintiff through litigation in the courts of this state, resulting in the frustration of the defendants' schemes. It alleges that the corporate life of the coal company expires August 7, 1925; that the plaintiff is the owner of 400 shares of stock therein of the par value of $25 each; that no meetings of the stockholders or directors have been held since March 20, 1899;

that the assets of the coal company consist of its interest in four quarter sections of land in Stark county and the right to compel the stockholders to pay into court the sum of their respective shares, and to be assessed by this court for an assessment to pay the debts of the coal company; that large quantities of coal are situated upon the lands; they might have been developed, made remunerative and paid dividends, but no coal has been mined and no income produced therefrom; that the officers of the coal company have never accounted for the sale of approximately $40,000 worth of stock. Upon information and belief, that the Investor's Syndicate and Tappen have converted to their own use the same; that the plaintiff advanced $3,440 to acquire the land assets of the coal company, and $1,200 to pay taxes and liens thereon, all when the coal company was organized. That for many years last past the coal company has failed to pay the taxes on such lands, and the same have been advanced by the plaintiff, for which the company is now indebted to him in the sum of $1,000; that unless the court declares a prior lien upon such lands in favor of the plaintiff to protect him in the moneys expended to acquire title to such lands, the defendants will fraudulently convert and absorb the title and interests of the coal company, and plaintiff's interest and stock will be worthless; that it is necessary that the court impress upon such lands a lien in favor of the plaintiff, paramount to the rights of the defendants; that if the stockholders are compelled to pay into court and discharge the claims and liens against the property, plaintiff's stock will be increased in value and he will be able to receive some income therefrom; that the defendants, in equity and conscience, should be required to make an accounting and disclosure concerning the stock; that they should be required to pay into court or into the hands of a receiver the amount due for the stock; that any liens against the property should be paid by the defendants, who have fraudulently attempted to cheat and defraud the plaintiff; that the rights of the defendants are subordinate to those of the plaintiff; that they should be restrained from asserting any rights superior to those of the plaintiff, and that any rights or title of the defendants asserted should be deemed held by such defendants as trustees *ex maleficio* for the benefit of the plaintiff. Further, the complaint demands that the plaintiff recover out of a sale of the lands all sums of money that he has invested in the coal company, and, if in-

sufficient, that the stockholders be assessed. to pay proportionately for the demand of the plaintiff.

*Decision.*—Upon the oral argument, the plaintiff stated that this proceeding is to be classed as an action *in rem.* Manifestly, it is wholly such an action, unless the service made upon Mr. Folsom be deemed a personal service upon the coal company. Even if the service of the process upon Mr. Folsom be deemed proper as a personal service upon the coal company, it is further manifest that this proceeding, in its essence, still will remain an action *in rem,* for the reason that an action *in personam* alone against the coal company would not serve to accomplish the allegations and purposes of the complaint, while the proceeding remained an action *in rem* against the remaining defendants. All of the parties, plaintiff and defendants, are nonresidents. No process was served upon any of the defendants within the state excepting the service made upon Folsom. The plaintiff maintains that this appeal must be determined upon the theory that the trial court's order was made as if a demurrer to the complaint had been interposed. No demurrer to the complaint appears in the record. The defendants made a special appearance and motion to quash the proceeding; upon that motion the trial court acted. The trial court's order may not convert the special appearance made into a general appearance so as to convert the proceeding from an action *in rem* to one *in personam,* unless the record demonstrates that the defendants have waived their rights. The plaintiff has characterized this proceeding as an action *in rem;* it is, in its essence, an action *in rem* regardless of the consideration to be given to the effect of the service made upon Folsom.

As a proceeding *in rem,* it was necessary and essential that the court first have jurisdiction of the *res,* the property of the defendants. In such proceeding the court has no jurisdiction over the person of the defendants. 12 C. J. 1226; Hughes v. Fargo Loan Agency, 46 N. D. 26, 178 N. W. 997. This proceeding is not an action to determine adverse claims or quiet title. The question of obtaining jurisdiction over the *res* pursuant to the statutory method prescribed therefor does not obtain. Comp. Laws 1913, § 8144 et seq.; note in 29 L.R.A.(N.S.) 625; Hughes v. Fargo Loan Agency, supra; Fenton v. Minnesota Title Ins. & Trust Co. 15 N. D. 365, 372, 125 Am. St. Rep. 599, 109 N. W. 363; Pom. Eq. Jur. 3d ed. § 135; Arndt v. Griggs, 134 U. S. 316, 33

L. ed. 918, 10 Sup. Ct. Rep. 557; Jones v. Gould, 80 C. C. A. 1, 149 Fed. 153; Pennoyer v. Neff, 95 U. S. 714, 24 L. ed. 565; Cabanna v. Graf, 87 Minn. 513, 59 L.R.A. 735, 94 Am. St. Rep. 725, 92 N. W. 462; Dull v. Blackman, 169 U. S. 248, 42 L. ed. 734, 18 Sup. Ct. Rep. 335; Hart v. Sansom, 110 U. S. 151, 28 L. ed. 101, 3 Sup. Ct. Rep. 586; note in Ann. Cas. 1914A, 769. The plaintiff alleges neither a title nor an interest in the real estate involved. It is true he claims and alleges the right to have a paramount lien impressed upon the lands, but this is made dependent upon his position as a stockholder in the coal company, and upon the amounts that he advanced when the company was organized, to acquire some of the lands involved and liens thereupon in payment of his stock. He does not ask to be subrogated to the theretofore existing interests of the vendors or lienholders. This right of the plaintiff is further made dependent upon the corporate action of the coal company, the Investor's Syndicate, and its officials, as well as the action of the other defendants, alleged to have been fraudulent, and for purposes of cheating and defrauding the plaintiff; the complaint seeks to have equity apply to the persons of the defendants. It requires that the defendants make an accounting concerning payments made upon their stock in the coal company. It seeks to have the court make an assessment upon defendants' stock; it demands a disclosure by the defendant officials of the coal company and the Investor's Syndicate. It requires that the defendants discharge or pay certain liens and claims, so as to thereby increase the value of plaintiff's stock in the coal company. It demands that the defendants be determined trustees *ex maleficio* of the lands. It seeks, further, that defendants pay *into court* or *into the hands* of a receiver moneys found due on their stock, and, for payment, out of the assessments made, upon plaintiff's demand, if a sale of the lands shall be insufficient so to do. In plaintiff's own words: "He asks the court to compel these defendants, who have paid nothing for their $40,000 worth of stock, to come into court, and, if there are debts outstanding against this corporation, then that they be compelled to contribute to the canceling of such debts, and, in other words, make a full disclosure of their relation to the defendant coal company." The plaintiff contends for the principle that equity is all powerful in its ability to reach out and do everything that is needful in order to protect the rights of a defrauded party and impose a con-

structive trust in protection. This principle may apply in an action *in personam,* but it is quite extraordinary to seek the application of this principle upon persons who are beyond the confines of this state and without the jurisdiction of the court. For it is to be noted, that the gist of the plaintiff's right is the establishment of this equitable paramount lien upon the lands after equity has searched the persons and consciences of the defendants, and their transactions in corporate affairs, and then has determined plaintiff's rights after a search, disclosure, and accounting. This perhaps may be done in equity if there be a jurisdiction over the *res* in the first instance, but surely this jurisdiction must first exist, and not as an aftermath of proceedings *in personam.*

It remains, therefore, to be seen in what manner the plaintiff has invoked a jurisdiction over the *res* in the light of the considerations applied to plaintiff's alleged cause of action.

The filing of the verified complaint and the affidavit for the publication or service of the summons without the state, even if held sufficient in form was not sufficient to confer a jurisdiction over the *res,* since no actual lien in fact is asserted except such as might result after proceedings *in personam,* and the lands were not otherwise placed *in custodia legis.* The filing of the *lis pendens,* furthermore, did not confer jurisdiction over the *res.* This is a mere notice of the pendency of an action, constructive to purchasers or encumbrancers. Comp. Laws 1913, § 7425. Accordingly, the record fails to disclose a jurisdiction over the *res.* It is unnecessary to determine the sufficiency of the service made upon Folsom, or of the affidavit for publication or service of the summons. It may be noted, however, that the statute under which the certificate of the appointment of Folsom as the resident agent of the coal company was filed with the secretary of state in 1895 was repealed over twenty-five years ago. See § 3192, Terr. Laws 1887 (§ 569, Dak. Civ. Code 1877, and chap. 36, Terr. Laws 1885) ; "Repeals" N. D. Rev. Codes 1895, pages 1517 and 1518. Sections 7426, 7428, Comp. Laws 1913, now provide the manner in which the summons may be served upon a foreign corporation.

Furthermore, in construing the complaint, this court will take judicial notice of its previous decision involving the parties herein, and of its records and the judgments rendered therein. See § 7937, Comp.

Laws 1913; People v. Oakland Water Front Co. 118 Cal. 234, 50 Pac. 308. For reasons hereinbefore discussed, and particularly because the allegations of the complaint involve, necessarily, direct proceedings *in personam,* in order to afford relief *in rem,* we are of the opinion that the complaint, viewed as a proceeding *in rem,* does not state a cause of action *in rem.* See also Fletcher, Cyc. Corp. vol. 8, § 5802.

The order of the trial court is modified accordingly, and the proceedings ordered dismissed, with costs to the respondent.

ROBINSON, Ch. J., concurs.

GRACE, J. (concurring specially). It is my opinion that the contentions of the defendants, that the attempt of the plaintiff to acquire jurisdiction over the defendants, by substituted service, was wholly ineffective and void, cannot be successfully denied.

In Johnson v. Engelhard, 45 N. D. 11, 176 N. W. 134; Krumenacker v. Andis, 38 N. D. 500, 165 N. W. 524, the subject of service by publication was quite fully considered. The law in this regard, as defined by the two cases above cited, was recognized and followed in the case of Hughes v. Fargo Loan Agency, 46 N. D. 26, 178 N. W. 997.

We think the contentions of defendants, that there was a lack of jurisdiction, by the failure to properly procure due service of the summons by publication, must be sustained, and the action, for this reason, dismissed.

CHRISTIANSON, J. (concurring specially). In my opinion the service of the summons in this case was ineffectual and void under the former decisions of this court. See Jablonski v. Piesik, 30 N. D. 543, 153 N. W. 274; Krumenacker v. Andis, 38 N. D. 500, 165 N. W. 524; Hughes v. Fargo Loan Agency, 46 N. D. 26, 178 N. W. 993.

I am further of the opinion that when the complaint in this case is construed in the light of the former decisions of this court rendered in the various actions brought by the plaintiff, Beyer—which actions all grew out of the same original transaction—it must be said that the complaint fails to state facts sufficient to constitute a cause of action.

BIRDZELL, J. (concurring specially). I am of the opinion that the

service was defective under former decisions of this court, which are cited in the other opinions and which need not be again cited here. I am also of the opinion that the complaint, viewed in the light of the prior litigation of which this court takes judicial notice, does not state a cause of action.

I do not, however, agree with the discussion in the principal opinion herein, which relates to the question as to whether this suit is to be treated as a proceeding *in rem* or *in personam*. It is my opinion that if the complaint states a cause of action at all, if proper service were had, and if the allegations and prayer for relief show an attempt to charge the lands within the state with a specific equitable lien, or as being held in trust *ex maleficio,* the rest of the complaint, in so far as it might appear to set forth a cause of action for either a personal judgment or for relief obtainable only through a decree operating *in personam,* might well, upon demurrer, be disregarded. In modern jurisprudence, where there is a subject-matter, such as property, within the jurisdiction upon which the equities in favor of a plaintiff can be made to operate through an equitable decree, the consideration as to whether the decree proceeds *in personam, in rem,* or quasi in either, is, in my opinion, too academic to warrant serious attention. See 1 Pom. Eq. Jur. 4th ed. §§ 135, 171, 428, 429; 4 Pom. Eq. Jur. 4th ed. §§ 1317, 1318.